(No. 31376.—

THE ILLINOIS NATIONAL BANK & TRUST COMPANY,
of Rockford, Trustee, Appellant, *vs.* THE CITY OF
ROCKFORD, Appellee.

*Opinion filed March 22, 1950—Rehearing denied May 15, 1950.*

GUYER & SMITH, of Rockford, for appellant.

CHARLES S. THOMAS, Corporation Counsel, (DAVID CONNOLLY, of counsel,) both of Rockford, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from the Appellate Court, Second District, which reversed a judgment for the plaintiff in the circuit court of Winnebago County. The cause is presented here on a certificate of importance from the Appellate Court.

This suit was brought by the Illinois National Bank & Trust Company of Rockford, trustee for Joseph Olson, beneficiary, hereinafter referred to as plaintiff, against the city of Rockford, designated as defendant herein, to recover damages resulting from the loss of use of property abutting a public alley, which loss of use was caused by the failure of the defendant to keep the alley open for public vehicular travel.

In the main, the material facts are uncontroverted. It appears that on August 3, 1896, the defendant city adopted an ordinance opening and dedicating a public alley ten feet wide extending from Wyman Street eastward to the west bank of the Rock River. The ordinance recites that the alley shall be kept free and clear from encroachments and obstructions which will in any manner militate against its use as a public alley.

The complaint and proof herein indicate that the plaintiff owns a vacant lot on this public alley, extending southward 66 feet from the south border of the alley and being 43½ feet in width. The west line of the lot is 98 feet east of the east side of Wyman Street and 135 feet west of the west bank of the Rock River. The east end of the alley

terminates at the west bank of the Rock River. Trucks apparently use the river bank as a means of ingress or egress into the alley from the east. The only normal entrance and exit of the alley would be by way of an entrance through Wyman Street.

The plaintiff's lot is bounded on the south by a vacant lot owned by the defendant city, which extends to Elm Street, but this lot is leased as a parking lot and the lessees refuse access to the plaintiff from Elm Street. In 1930, the defendant city raised the grade of and paved Wyman Street, leaving the alley approximately five feet below the grade, rendering it useless and unavailable for public vehicular travel. Thus, the plaintiff's land is an island surrounded by other properties, which do not allow vehicles to reach or leave it. In 1946 plaintiff and others requested the city to open and improve the alley to provide access, which request was ignored.

It is also shown by the record that the plaintiff acquired his lot by deeds from various heirs of the original owner, all of which were recorded August 6, 1944. The alley was at grade with Wyman Street until 1930, but when Wyman Street was widened and paved, there was a drop of fifty-five inches from the street to the alley entrance and the alley could not thereafter be used for vehicular traffic, although there were stairs for pedestrian use. Mr. Olson, who was the beneficiary of the trust of which the plaintiff bank was trustee, testified that he was in the parking business and that there was no access to his property for vehicular traffic. He further testified he could have rented the property for ten individual car stalls, at six dollars per month, from August 16, 1944, until November 1, 1947, and thereafter at ten dollars per stall.

By this action the plaintiff sought damages because the city wrongfully permitted the alley to be and remain obstructed and inaccessible to the plaintiff, and plaintiff has been wholly prevented from using the lot for any purpose.

The complaint also instituted a separate equity action seeking an injunction against the city to prevent it from permitting the alley to remain unusable for public travel. The count in equity was dismissed.

To the allegations of the complaint, the defendant filed a motion to strike and dismiss the suit on the grounds that the suit was not filed within five years and hence was barred by the five-year Statute of Limitations. This motion was denied. The defendant then filed an answer denying the basic allegations of the complaint, setting up that pedestrian travel to and in the alley has not been blocked since 1930, and also again pleading the Statute of Limitations.

The defendant offered in evidence special assessment proceedings involving the opening and widening of Wyman Street, but they were excluded by the trial court. The city also introduced tax and special assessment proceedings involving the property to show the sale price for the property. Testimony was taken as to the cost of the property when purchased by Olson. On the basis of the evidence received, the trial court found for the plaintiff in the sum of $3410 for the loss of parking space.

The Appellate Court reversed the judgment of the trial court on the grounds that the improvement to Wyman Street was a permanent improvement, the damage from which could have been ascertained on the date of the improvement of the street. Under those circumstances, the Appellate Court, under the law, held that the plaintiff's action was barred by the five-year Statute of Limitations. The Appellate Court distinguished the cases cited by the plaintiff, and held that when the plaintiff bought the property in question in 1944, it knew the condition of the alley and knew that the alley was closed to vehicular traffic.

The defendant city again urges upon this court the Statute of Limitations; (Ill. Rev. Stat. 1947, chap. 83, par. 16,) that the change of grade of Wyman Street is the

gist of the action here; that the plaintiff did not own the property abutting the alley when improvement was made in 1930; the special assessment proceeding afforded an opportunity to determine the damage to the land acquired by the plaintiff-appellant; and the measure of damages used by the trial court was erroneous.

The plaintiff below, appellant here, argues that the gist of the action is not the damage caused by the widening and change of grade of Wyman Street, but is the refusal of the city of Rockford to keep the alley free from obstruction and open for public travel of every character. Plaintiff predicates his action upon the theory that the city of Rockford owes the duty to keep the alley in question in a reasonably safe, usable condition, free of obstruction; that the 55-inch declivity existing at the west end of the alley constitutes an obstruction rendering vehicular traffic to and from plaintiff's premises impossible, and that the continued failure of the defendant city to repair, open or maintain the alley for vehicular traffic wrongfully deprives the plaintiff of the use or enjoyment of his premises. It is the position of plaintiff that the obstruction is in the nature of a common or public nuisance and that plaintiff is especially damaged because he has no other means of egress or ingress to his premises.

The Appellate Court determined that the plaintiff's action here was barred by the Statute of Limitations on the authority of *Monarch Refrigerating Co.* v. *City of Chicago,* 328 Ill. App. 546, and related cases which will hereinafter be discussed. In the *Monarch Refrigerating Co. case,* the plaintiff was engaged in the cold storage warehouse business. The construction of the Wabash Avenue bridge in the city of Chicago had interfered with the free and open access the plaintiff had to other sections of the city and the change in grade of the viaduct and bridge deprived the plaintiff of the beneficial use of its property and interfered with the ingress and egress of the plaintiff

from and to the premises. The city filed a motion to dismiss on the basis that the action was barred by the five-year limitation. The court there held, at page 556: "Plaintiff could have brought its action on April 29, 1931. At that time the damage to plaintiff's property was evident and ascertainable. The grades of the streets had been changed and the street, viaduct and approaches were paved and open to traffic. We are satisfied that plaintiff's action was barred by the five year limitation and that the court was right in sustaining defendant's motion and entering judgment against plaintiff."

In *Schlosser* v. *Sanitary Dist.* 299 Ill. 77, a suit was filed for damages for flooding property on the Des Plaines River, resulting from lowering the dam at Lockport. At pages 82 and 83, we said: "The drainage canal is a permanent structure whose use and operation in the manner authorized by law were necessarily injurious to the appellee's land. The declaration did not complain of the manner of construction, operation or use of the canal or the works connected with it or of any negligence of the appellant, but alleged a permanent injury to the appellee's land caused by the existence, operation and use of the canal in the manner authorized by law. For such injury the person injured must recover all damages which he has sustained or will sustain in the future from the operation of the canal in the manner and to the amount then authorized by law in a single suit, and that suit must be brought within five years after the completion of the work and putting it in operation. [Citing cases.]"

The plaintiff argues that these cases are not applicable to the situation before us, in that in none of them is there any claim for damage arising through the failure of a city to perform a duty such as keeping a street or alley open for public travel; hence, those cases do not bear upon the problem presented here. Counsel admit that the rule announced in those cases applies where property is necessarily

damaged by a public improvement lawfully made, properly constructed and permanent in character. That rule is that where the damages to abutting premises occasioned by a lawfully made public improvement, properly constructed and permanent in character, are fixed upon the completion of the improvement, the action for the recovery thereof must be instituted within five years after the completion.

To distinguish these cases, the plaintiff admits that the widening of Wyman Street was a lawful project undertaken by the defendant city, and that the street, as widened, is permanent in character, yet it strenuously denies that the improvement was properly made, for the reason that the grade of the street was left 55 inches above the grade of the tributary public alley. Plaintiff further states, that the widening of Wyman Street did not necessarily injure plaintiff's property. Plaintiff's property was injured, its counsel say, only because the city of Rockford unnecessarily, even unlawfully, failed and refused continually over a long period of years, after the widening of Wyman Street, to bring the grade of the alley to the grade of the street, thereby rendering the alley unusable to its abutting owners and the public. Plaintiff further argues that Wyman Street, as such, does not injure the property in question here, as it is not necessary to tear out Wyman Street in order to render the alley usable. Plaintiff claims it is only necessary that the city raise the grade of the alley to the grade of the street to make the property in question usable.

The plaintiff contends that this cause is governed by our holding in *Jones* v. *Sanitary Dist.* 252 Ill. 591, where the action was brought by the owner of lands claimed to have been damaged during the five years prior to the commencement of the action by the overflow of water from the Illinois River in connection with the operation of the sanitary district, which acts were charged to be negligent. The sanitary district interposed the plea of the five-year Statute of Limitations. At page 596, this court said: "The contention

that the court erred in sustaining the demurrer to the plea of the Statute of Limitations is based upon the claim that as the building of the drainage canal is authorized by an act of the legislature and is permanent in its character, the injury inflicted upon appellee, if any, is permanent, and he is limited to one cause of action for the recovery of all damages, past, present and prospective, and that his right of action accrued more than five years before the commencement of the suit. In support of this contention appellant relies on the class of cases which hold that when the original nuisance or cause is of a permanent character, so that the damage inflicted is of a permanent character and goes to the entire destruction of the estate affected thereby, the recovery not only may, but must, be had for the entire damage in one action, as the damage is deemed to be original. In those cases the injured lands were adjacent to the structure complained of, so that its construction necessarily and immediately destroyed or depreciated their value. This case does not fall within that class. The improvement known as the drainage channel is permanent in character, but it is not alleged that appellee suffered damage by reason of its construction. The construction and continuance of the channel more than 200 miles from appellee's land is not necessarily an injury. It is the use that has been made of it that it is complained has caused the injury. * * * The fact that the channel is a permanent improvement does not, of itself, serve to determine when, if ever, or to what extent, injury will be suffered. That the injury complained of is not necessarily caused by the construction or existence of this permanent improvement is evidenced by the fact that at times the river is within its banks and the lands of appellee are not overflowed. * * * The permanency of the injury is the test as to whether damages for all time must be assessed. * * * While, as the plea alleges, the channel of appellant was built under authority of law and may have been constructed

in a proper and skillful manner, yet its continuance and operation, under the allegations of the declaration, will not necessarily result in injury to the lands of the appellee. Where the continuance and operation of a permanent structure are not necessarily injurious, but may or may not be so, then only the injury sustained prior to the commencement of the suit may be compensated in that suit. [Citing cases.]" The plaintiff then cites *Vette* v. *Sanitary Dist.* 260 Ill. 432, as distinguishing the *Jones case* from cases cited by both the defendant city and the Appellate Court in its opinion. In the *Vette case,* the following language appears at page 438: "* * * but it did not appear, [in the *Jones case*] either from the declaration or from the plea, that the continuance in operation of the channel of appellant would necessarily result in injury to the lands of appellee, and it was held as a turning point in that case, that where the continuance and operation of a permanent structure are not necessarily injurious but may or may not be so, then only the injuries sustained prior to the commencement of the suit may be compensated in that suit. The converse of this proposition is true, viz., that where the continuance and operation of a permanent structure are necessarily injurious, then damages for all the injuries sustained must be recovered in one suit."

Accepting the plaintiff's analysis of cases cited by the defendant city and by the Appellate Court in its opinion, we must determine whether or not the public improvement was lawfully made, was properly constructed or operated, was permanent in character, and was necessarily injurious to plaintiff's property. If these elements exist, the distinction urged by the plaintiff herein is not well taken. The plaintiff admits that the public improvement was lawfully made. The proper ordinances were passed and the proper action taken to effect the widening and increasing grade of Wyman Street. There seems to be no argument either as to whether or not Wyman Street was properly con-

structed. The only argument which plaintiff makes in this regard is that the alley was not properly raised in grade and that should have been done as a part of the improvement of Wyman Street. There is no question that the improvement of Wyman Street was permanent in character. It exists today as it existed in 1930 when it was built, and will continue to so exist until a further change in grade is made by proper action of the defendant city. We now come to the question of whether or not this improvement was necessarily injurious to the plaintiff's property.

To be consistent in its argument, the plaintiff must argue that its land is damaged because the alley does not allow ingress and egress to it. This lack of ingress and egress to the property came about in 1930 when Wyman Street was improved and has existed every day since that time. It is obvious, looking at the practical aspects of the situation, that the increase in grade of Wyman Street without the increase in grade in the tributary alley is the source of the damage complained of herein. The moment that Wyman Street was increased in grade and nothing was done to the public alley, the plaintiff's land was necessarily damaged. The fact that the land was not accessible was subject to ascertainment on the date that Wyman Street was completed. The lack of ingress and egress by means of the alley existed from that day forward and no one can argue that the plaintiff's land was not necessarily damaged as a result, by reason of the increase in grade in Wyman Street. This is the distinguishing factor from the cases cited by the plaintiff and is the answer to the attempt of the plaintiff to distinguish those cases cited by the Appellate Court.

In the cases cited by the plaintiff, such as *Jones* v. *Sanitary Dist.* 252 Ill. 591, the damage did not depend upon, or arise from, the construction of the improvement, but upon something that could, but did not necessarily have to happen, such as the overflow of banks by water. In the

*Jones case* it was stated that there were long periods of time when the water did not overflow upon the plaintiff's property. There were only certain times, when the sanitary district was not properly operated, when the plaintiff was damaged as a result of the improvement. In the present case, the damage is apparent and continuous. The only possible way in which the present case could be compared with the *Jones case* is to argue negatively, that is, that there is no necessary injury to the property of the plaintiff if the city would raise the grade of the alley. Such an argument appears to be without merit. The only basis upon which it can be made is that the city was required by law to raise the grade of the alley at the time the grade of Wyman Street was raised.

The inherent right of a city to alter streets by changing grades was discussed in *City of Bloomington v. Pollock,* 141 Ill. 346. In that case, at page 350, we said: "It would seem, then, in respect to the legal liability of a municipal corporation for damage done in grading its streets, that it is wholly immaterial, from a legal standpoint, whether such grading is done under an ordinance establishing a grade in the first instance, or under an ordinance changing the grade, for even if there be a prior ordinance it does not have the elements of a contract, does not impose a legal duty to level or bring the streets to the grade fixed by it, and does not prevent the municipality from placing its streets at any grade that it may thereafter ordain. In other words, either with or without a prior ordinance, the city is free to establish, by ordinance, any grade it sees fit, subject only to the qualification that such grade is not so wholly unreasonable as to render the ordinance void. It is suggested that when a public street is dedicated, the dedicator must be held to contemplate and consent that such street may be brought to an official grade, and that his assignee of adjoining lots stands in his shoes; and that if the street is acquired by eminent domain, the right to

grade is included in the compensation awarded. But it may be also said that the dedicator is bound to know that an unrestricted power to grade is a continuing power, and that the exercise of such power is not in the nature of a compact, and that he must therefore be held to also contemplate and consent that, as the exigencies of growth and business require, the grade of the dedicated street may be changed; and it is not perceived why the compensation awarded in the condemnation proceeding does not include the right to change the grade of the street acquired, whenever the municipal authorities so elect. In fact, we are unable to see any sound legal ground for a distinction between cases where the damage is done under an ordinance which changes the grade of a street, and cases where the damage is done under an ordinance which for the first time establishes the grade." On the basis of this case, we can only conclude that the city's right to alter the grade of Wyman Street without altering the grade of the alley depends upon whether or not the city's action was unreasonable. We cannot say here that the action of the city was unreasonable. While the matter was not urged in the court below, the description of the alley as being only ten feet wide with an apparent lack of use of its facilities to any great extent would indicate that the improvement of Wyman Street was not unreasonable in not allowing a connecting link with the alley in question.

We, therefore, agree with the Appellate Court that the improvement here is governed by the holding in *Monarch Refrigerating Co.* v. *City of Chicago,* 328 Ill. App. 546, and *Schlosser v. Sanitary Dist.* 299 Ill. 77. The cases are more nearly in point and more nearly govern the cause before us. The argument attempted here could just as well have been made in the *Monarch case.* That case, however, clearly illustrates the fallacy of the contention. Our holding, then, is that the injury to the land of the plaintiff has arisen from a public improvement which was lawfully

made, properly constructed and operated, permanent in character, and necessarily injurious to the plaintiff's property from the day that such improvement was completed. Under the law of the cases cited, the plaintiff's action, or that of its predecessor, must have been commenced within five years of the date of completion of the improvement. No action was ever taken within that time.

It should also be noted that the plaintiff here purchased this property with full knowledge of the existing situation and with full knowledge of the assessment proceedings which had afforded an opportunity to the owner of the premises for proving damages for the injury to the land in question. The plaintiff purchased this property knowing that the alley was closed to vehicular traffic. Under the circumstances, we feel that the plaintiff accepted the land as it found it. In *La Salle County Carbon Coal Co. v. Sanitary Dist.* 260 Ill. 423, we held that if the owner of real estate injuriously affected or damaged by a permanent structure, and who has not brought an action to recover damages, conveys the land to another, the cause of action does not pass with the title nor inure to the benefit of the grantee, but the grantee takes the land as he finds it, the presumption being that he has the benefit of the depreciation in value in the price paid. This is the case here. Plaintiff purchased the property with full knowledge of the existence of the obstruction to the alley and the presumption is that it takes it with the benefit of the depreciation in value of the price paid. No cause of action was instituted by the prior owner of the property and the situation has been allowed to exist since 1930.

In view of the holding we have taken in this case, we do not feel called upon to discuss the other matters urged by the plaintiff and the defendant herein. For the reasons stated herein, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*