James POE, et al., Plaintiffs,

v.

LYNCHBURG TRAINING SCHOOL
AND HOSPITAL, et al.,
Defendants.

Civ. A. No. 80–0172.

United States District Court,
W. D. Virginia,
Lynchburg Division.

April 13, 1981.

**790**

Patrick M. Raher, Hogan & Hartson, Alexandria, Va., Alexander W. Bell, Bell & Spies, Lynchburg, Va., Peter Raven-Hansen, National Law Center, George Washington University, Washington, D.C., American Civ-

il Liberties Union of Virginia, Richmond, Va., for plaintiffs.

Robert T. Adams, Mary Yancey Spencer, Asst. Attys. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

This case is filed as an individual and class action suit challenging the involuntary sterilization of a number of men and women by Virginia state officials acting pursuant to a statute enacted in 1924 by the Commonwealth of Virginia. The complaint also challenges the constitutionality of the purported refusal of appropriate Virginia state officials to notify all those persons who received such surgery as to their medical status and medical alternatives. In short, plaintiffs allege that many of those who were involuntarily sterilized are still unaware of the reason for their infertility as well as the medical ramifications of the procedure. Essentially, the action is founded upon 42 U.S.C. § 1983, with jurisdiction asserted pursuant to 28 U.S.C. §§ 1341 and 1343. The matter is currently before the court on defendants' motion to dismiss.

In 1924, the Commonwealth enacted legislation providing for the sexual sterilization of "mental defectives" in certain cases. 1924 *Acts of Assembly*, Chap. 394. As set forth in defendants' memorandum in support of the motion to dismiss, the statute specifically prescribed certain preliminary procedural steps including notification to the individual, or his or her parent, guardian, or committee as might be appropriate. Shortly after enactment of the statute, the constitutionality of the entire practice was tested in court, and the controversy eventually reached the United States Supreme Court. In *Buck v. Bell*, 274 U.S. 200, 47 S.Ct. 584, 71 L.Ed. 1000 (1927), the United States Supreme Court held that the statute was not violative of any constitutionally guaranteed rights. However, in 1974, the involuntary sterilization statute was repealed. 1974 *Acts of Assembly*, Chap. 296. The parties agree that the Commonwealth has no statutory procedures permitting involuntary sterilization at the current time.

Several of the individual plaintiffs in this case underwent involuntary sterilization pursuant to the statute. These plaintiffs also purport to sue on behalf of all persons who have been involuntarily sterilized at governmental institutions in Virginia under color of state law. Two individual physicians have also joined as plaintiffs. These doctors also seek to represent a class of physicians who have provided or are willing to provide medical services to the involuntarily sterilized persons and who are unable to provide adequate services due to the defendants' alleged refusal to appropriately notify the sterilized persons as to their medical status and alternatives. As parties defendant, plaintiffs have named all the state hospitals at which the involuntary sterilizations were previously performed, and the current directors of those hospitals, as well as their predecessors, all in their official capacities. Also named as defendants are the Commissioner of Mental Health and Mental Retardation of the Commonwealth of Virginia, the State Mental Health and Mental Retardation Board, Jean L. Harris, M.D., the Secretary of Human Resources of the Commonwealth of Virginia and Governor John N. Dalton, all in their official capacities.

Plaintiffs' prayer for relief essentially tracks the contentions set forth in their complaint. Stated briefly, plaintiffs seek as follows:

1. Entry of a judgment declaring that:

(a) the forced surgical sterilization of the sterilized class by Virginia state officials and agencies violated the Fourteenth Amendment, 42 U.S.C. § 1983, and the common law of Virginia; and

(b) defendants' subsequent failure to notify and prevent further harm to members of the sterilized class violates the Fourteenth Amendment, 42 U.S.C. § 1983, the Developmentally Disabled Assistance and Bill of Rights Act, and the common law of Virginia.

2. Entry of an Order enjoining defendants from authorizing or conducting any surgical sterilization without prior informed consent; and

3. Entry of an Order requiring defendants to provide adequate notice to all members of the sterilized class of the facts and circumstances of their involuntary surgical sterilization, including the effects and possible reversibility of the operations, and to provide such medical, surgical, and psychological assistance as is necessary to prevent further harm to members of the sterilized class, including operations to reverse the sterilization where possible.

Plaintiffs also seek compensation for costs, attorneys' fees, and other relief as may prove appropriate.

Defendants' motion to dismiss for failure to state a claim is based on the assertions that the requested relief is barred by virtue of the Eleventh Amendment; that the complaint does not allege an actual case or controversy; and that the action is barred by virtue of the applicable statute of limitations. In addition, defendants contend that the plaintiff physicians are without standing. All memoranda and oral argument having been received, the court proceeds to consideration of the motion.

The court has reached the conclusion that the motion must be granted in part and denied in part. Specifically, as to the different forms of relief sought by the complaint and as enumerated above, the court will enter an order granting the motion as to sections 1(a) and 2 of the prayer, and denying the motion as to sections 1(b) and 3. The court will also dismiss the complaint in its entirety as to all the plaintiff physi-

cians. In reaching disposition on the motion, the court has found it necessary to distinguish between the theoretical practice and procedure under the Virginia involuntary sterilization statute and the actual practice as alleged by the individual sterilized plaintiffs in their complaint.

■■■ Regardless of whatever philosophical and sociological valuation may be made regarding involuntary sterilizations in terms of current mores and social thought, the fact remains that the general practice and procedure under the old Virginia statute were upheld by the highest court in the land in *Buck v. Bell, supra.* It is no answer for the plaintiff to allude to changing patterns of social and constitutional thought as a ground for reopening the inquiry. Since 1974, well before the filing of the instant action, Virginia has had no involuntary sterilization statute. In short, this court has neither the authority nor the occasion to undertake an evaluation as to the constitutionality of the old Virginia statute permitting forced sterilizations. As to those portions of the complaint undergirding the requested declaration sought by section 1(a) of the prayer for relief and involving the legality of the sterilizations performed pursuant to the statute,[1] it is clear as a matter of law that no justiciable conflict has been presented to the court. *See*, gen., *Flast v. Cohen*, 392 U.S. 83, 94–97, 88 S.Ct. 1942, 1949–51, 20 L.Ed.2d 947 (1968).

Given the repeal of the involuntary sterilization statute, it is also apparent that plaintiffs are not entitled to an order, as

1. The court recognizes that in making these arguments, and in attempting to distinguish *Buck v. Bell, supra*, plaintiffs have relied primarily on what they perceive as a constitutional deficiency in the procedural aspects of the old Virginia statute. The court also recognizes that *Buck* dealt with an attack to the statute's substance rather than its procedure. Nevertheless, in delivering the court's opinion in *Buck*, Justice Holmes specifically noted that "... there is no doubt that ... plaintiff in error has had due process of law." 274 U.S. at 207, 47 S.Ct. at 584. The court notes that plaintiffs have also alleged a deviation between the stated procedure and the actual procedure under the statute. While these allegations will be considered in more detail in the context of the

contention of a "continuing deprivation" due to failure to notify, the court notes for purposes of this argument that, at the most, plaintiffs might establish that on some occasions, certain officials acted inconsistently with the procedural requirements of the statute. Such a circumstance certainly would not justify entry of a declaration holding all sterilizations under the statute to be illegal as per plaintiffs' prayer. Moreover, an allegation of such past deviations, *standing alone*, does not remotely suggest the existence of a present case and controversy, absent a viable demand for monetary damages and absent identification of any parties defendant who could now be held answerable for such damages.

sought in section 2 of the prayer, enjoining defendants from authorizing or conducting any surgical sterilization without prior informed consent. The complaint gives absolutely no indication that any of the defendants are likely to undertake such action in the future. Plaintiffs do not allege that there is any statutory or regulatory basis under which such action could be even conceivably undertaken. There is no reason to indicate that plaintiffs would, or could, be subjects of such action. Plaintiffs' allegations in this regard do not state the existence of a justiciable case or controversy and must accordingly be dismissed.

■ The court now directs its attention to those portions of plaintiffs' complaint and prayer dealing with defendants' alleged failure to notify plaintiffs of the fact of their sterilization and to otherwise provide information and assistance as might be appropriate. As suggested above, the old Virginia statute contained provisions which insured, at least in theory, that persons considered for involuntary sterilization, and their representatives, would be well advised prior to the surgery as to its purpose. Plaintiffs have alleged facts which indicate that in at least some instances, such notification was not provided and that potential candidates were affirmatively misled as to the purpose of the surgery. Plaintiffs contend that many such persons who were inadequately or inaccurately informed have suffered and continue to suffer medical, emotional, and mental problems, arising in large part from unsuccessful and uninformed attempts to deal with their infertility. Plaintiffs contend that defendants continue to refuse to notify and inform all those affected persons despite the fact that defendants now have reason to believe that some involuntarily sterilized persons were not properly notified at the time of their hospitalization. In short, plaintiffs contend that, in actual practice, the notification pro-

visions of the statute were often not honored *and* that state officials have continued to perpetrate the deprivation through their subsequent refusal to notify all involuntarily sterilized persons as to their status. To the extent that the complaint sets forth such allegations, and to the extent of sections 1(b) and 3 of the prayer for relief, the court must conclude that the complaint states a claim.

As it must at this juncture, the court accepts as true all factual allegations of the complaint. Given those allegations, given the fundamental nature of personal interest involved, and considering the continuing anguish and discontent which could reasonably be inferred assuming that appropriate notification had been intentionally or negligently withheld, the court is unable to conclude as a matter of law that defendants are dispossessed of all continuing legal duty to plaintiffs. *See,* e. g., *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C., 1979). An exact determination as to the existence and extent of that duty must await more comprehensive development of the case, and indeed if such a duty does exist, it might well be that appropriate discharge of the duty would be inconsistent with the relief sought by plaintiffs.[2]

■ Having found the legal potential for the maintenance of a claim of continuing deprivation, given the absence of a demand for monetary damages, and considering the court's ruling as to the other allegations of the complaint, the court also concludes that the action is barred neither by the Eleventh Amendment nor the statute of limitations. The remedies which plaintiffs are now permitted to seek encompass prospective relief only, premised on an allegedly continuing deprivation. Consequently, the Eleventh Amendment is no bar to the action.[3] *See Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977);

2. Defendants have suggested that general notification at this late date might cause greater harm than good. However, such questions are not properly addressed pursuant to a motion to dismiss for failure to state a claim.

3. Assuming that plaintiffs do prevail in establishing the existence of such a continuing deprivation, they cannot of course expect to pursue claims for medical services which would have not otherwise been available but for the lack of proper notification.

*Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Since the alleged deprivation is of a continuing nature, the action, to the extent delineated above, is obviously not time barred. *Williams v. Norfolk and Western Railway Company*, 530 F.2d 539, 542 (4th Cir., 1975). Accordingly, the motion to dismiss must be denied as to sections 1(b) and 3 of the prayer for relief.

▉ Finally, the court must conclude that the plaintiff physicians are without standing in this matter. In order to meet the threshold standing requirements of Article III of the Constitution, plaintiffs must allege a concrete and direct injury to themselves. The plaintiff physicians have no right to treat the involuntarily sterilized persons. Their rights have been neither injured nor threatened as a result of the purportedly illegal deprivation. *See Warth v. Sedlin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The physicians in the instant case must be distinguished from those of *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) and *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) where the physicians might have been subject to criminal penalties had not the rights of the primary litigants been vindicated. At the most, the plaintiff physicians in this case seek to uphold the rights of third persons who may or may not eventually be patients. The adjudication of those rights will be neither accentuated nor implemented by the maintenance of the physicians as plaintiffs. For these reasons, it must be concluded that the plaintiff physicians are without standing and are properly subject to dismissal. *See Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953).

## CONCLUSION

For the reasons as stated, Sections 1(a) and 2 of plaintiffs' prayer for relief, and the portions of the complaint relative thereto, will be dismissed. Defendants' motion will be denied as to sections 1(b) and (3) of the prayer. The plaintiff physicians will be dismissed for want of appropriate standing.

An order in conformity will be entered this day. The case will be set for further proceedings upon petition of the parties.