HYON WASTE MANAGEMENT SERVICES, INC., Plaintiff-Appellee, v. THE CITY OF CHICAGO, Defendant-Appellant.

First District (2nd Division)   No. 1—89—2242

Opinion filed May 21, 1991.—Rehearing denied June 18, 1991.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Ruth M. Moscovitch, and Mardell Nareim, Assistant Corporation Counsel, of counsel), for appellant.

J. Barton Kalish & Colleagues, of Chicago (J. Douglas Weingarten, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Hyon Waste Management Services, Inc. (Hyon), filed suit in the circuit court of Cook County pursuant to 42 U.S.C. §1983 (1988) against the City of Chicago (the City), alleging that the City violated its right to procedural due process by sealing its hazardous waste incinerator without prior notice or hearing. After the circuit court granted summary judgment to Hyon on the issue of liability, a jury awarded Hyon $3,797,000 in damages and the court entered judgment upon this amount. The City appeals both the grant of summary judgment and the jury's award of damages, raising as issues (1) whether Hyon's complaint for the alleged violation of due process was barred by the five-year statute of limitations; (2) whether Hyon had a protected property interest in operating its incinerator and whether the City deprived Hyon of this interest without due process; (3) whether the City can be held liable for the decision of the Commissioner of the Department of Environmental Control (the Commissioner) to seal Hyon's incinerator; (4) whether the jury was properly instructed on the issue of damages; and (5) whether the jury's verdict is supported by the evidence.

In 1970, Hyon leased land in Chicago in order to build a hazardous waste incinerator. In 1972, the City issued Hyon an installation permit and Hyon thereafter operated its incinerator until 1977.[1]

During this period of operation, the Hyon waste facility experienced a number of problems. In May 1972, 4,300 gallons of sulfuric acid spilled onto the ground at Hyon. In October 1972, Hyon acknowledged to the City that strong, objectionable odors were emanating from the facility. In December 1972, an oil spill at the facility caused oil to run into Lake Calumet. Because of structural problems during construction, the incinerator could not operate during most of 1973 and 1974. During 1973 and 1975, Hyon used biological effluent, rather than lake water, in the incinerator scrubber, which caused the incinerator stack to produce odors. In June 1976, the City's Department of Environmental Control (the Department) spread bleach onto the biobeds at Hyon because of problems with a skunk-like chemical odor coming from Hyon.

Due to the number of regulatory problems at the Hyon facility, the Department issued a notice of violation in July 1976. The notice stated that Hyon had violated the City's environmental control ordinance by emitting noxious odors and smoke, and operating in an unsafe condition. It ordered Hyon to cease accepting any waste, to begin the cleanup of the facility by lowering the levels of liquid in basins and tanks, to remove all drums containing wastes, and to refrain from operating the rotary kiln incinerator. The notice warned that failure to comply within 10 days would result in the revocation of all permits.

On August 3, 1976, two inspectors from the Department examined Hyon's facility. Based upon the notice of violation and the inspector's subsequent report revealing lack of compliance, the Commissioner of the Department notified Hyon that all permits were revoked as of August 4, 1976.

After the August 4, 1976 revocation, Hyon's officers met with members of the Department staff, and on August 20, 1976, Hyon proposed an improvement schedule which would allow Hyon to reopen and continue to operate. On August 25, 1976, Hyon appealed the Department's revocation of all of Hyon's permits to the Department appeal board. On September 1, 1976, while the appeal was pending,

---

[1]The Municipal Code of Chicago provides that an installation permit allows the installation, construction, or alteration of an incinerator; however, a certificate of operation is necessary to allow its operation. See Municipal Code of Chicago, ch. 17, §§17—2.28, 17—2.42.

Hyon and the Department entered into an agreement settling the appeal.

The agreement required Hyon to reduce its drum storage at the facility to 1,000 by October 31, 1976, and to keep the inventory at or below 1,000 drums. The agreement further stipulated that the drums stored at the Hyon facility were to have their contents clearly marked on the outside and that Hyon was to construct a drum storage area by November 15, 1976. In addition, Hyon was required to take immediate steps to eliminate odors, to stop accepting wastes if it was unable to correct the odor problems, and to operate the plant so as not to create environmental problems. Installation permits would be issued to Hyon for a period of 90 days at which time field inspection reevaluation would be made prior to issuance of a certificate of operation. If Hyon did not meet the requirements of the agreement, the Department could order Hyon to stop receiving wastes.

On September 10, 1976, the Department sent Hyon a telegram stating that Hyon was the source of objectionable skunk-like odors reported by citizens and that, pursuant to the agreement, Hyon must eliminate those odors immediately. Later, on October 4, 1976, the Commissioner wrote to Hyon stating that when he had visited the facility he had been "unhappy" about the odors still lingering there. On October 5, 1976, the Department issued Hyon a citation for producing smoke. Again, on October 22, 1976, and on November 18, 1976, Hyon was issued citations for smoke emissions which did not meet environmental standards.

During October 1976, Hyon and the Department met to discuss ways in which Hyon could eliminate its odor problem; Hyon proposed a program on October 15, 1976, which was unsatisfactory to the Department. On October 19, 1976, the Commissioner wrote to Hyon stating that Hyon had failed to take sufficient positive steps to eliminate odors; in his letter, the Commissioner ordered Hyon to stop accepting wastes pursuant to the agreement. On October 21, 1976, the Commissioner revoked Hyon's biological waste treatment installation permit. Hyon appealed the revocation, and on November 10, 1976, the Department's appeal board upheld the revocation, stating that Hyon's odors violated City ordinances.

On December 7, 1976, the Commissioner informed Hyon that its installation permits would expire on December 14, 1976, and that operation after that date would violate the Municipal Code of Chicago. On December 13, 1976, Hyon sent a telegram to the Commissioner requesting operating permits pursuant to the September 1, 1976, agreement. Although Hyon did not receive a permit to operate, it continued

to operate its incinerator and received several citations from the Department for operating its incinerator without a permit.

On January 3, 1977, the Department inspected the Hyon facility in accordance with the September 1, 1976, agreement. The inspection stated that Hyon was not complying with the agreement: approximately 300 drums were not marked with their contents; a drum storage area was not built; and, although Hyon had no permits, it was operating its incinerator one week per month and was still receiving burnable waste.

On January 5, 1977, the Department informed Hyon that it was denying operating permits because Hyon had no effective means of controlling the smoke and odors emanating from its facility. Hyon did not appeal the Department's decision to the appeal board. On January 11, 1977, the Department sealed Hyon's incinerator and ordered Hyon to stop using it.

On January 21, 1977, Hyon filed a chancery action in the circuit court of Cook County seeking injunctive relief from the seal. When the circuit court denied Hyon a preliminary injunction, Hyon appealed, and the appellate court reversed and directed the circuit court to issue a preliminary injunction pending the City's compliance with the notice and hearing provisions of section 17—2.56 of the Municipal Code of Chicago. (*Hyon Waste Management Services, Inc. v. City of Chicago* (1977), 53 Ill. App. 3d 1013, 369 N.E.2d 179.) On December 28, 1977, the seal was removed.

On April 14, 1982, Hyon filed a civil rights action under 42 U.S.C. §1983 (1988) against both the City and the Commissioner of the Department.[2] The City filed a motion to dismiss the complaint because it was filed after the five-year statute of limitations had run; however, on September 13, 1982, Judge Thomas O'Brien denied the City's motion to dismiss.

On May 17, 1983, Hyon filed a motion for summary judgment on the issue of liability which was granted by Judge Myron Gomberg on January 20, 1984. Thereafter, the City filed a motion to vacate the summary judgment against it based upon recent case law that there was no right to procedural due process unless a plaintiff shows that it has a constitutionally protected property interest. (See *Superdawg Drive-In, Inc. v. City of Chicago* (1987), 162 Ill. App. 3d 860, 516 N.E.2d 272.) On February 23, 1988, Judge Gomberg vacated summary judgment against the City. In so ruling, Judge Gomberg stated

---

[2]The Commissioner was later dismissed as a defendant pursuant to Hyon's motion.

that he could not find that Hyon had a property interest because its permits had expired in December 1976, prior to the sealing of the incinerator.

On March 10, 1988, the City filed a motion for summary judgment and, in response, Hyon filed for partial summary judgment on the issue of liability. On April 13, 1988, Hyon filed a motion to amend its complaint to include a claim that the City violated its due process rights by refusing to issue a certificate of operation on January 5, 1978. On April 21, 1988, Judge Walter Kowalski granted Hyon leave to file its amended complaint. The City then filed a motion to dismiss the amended complaint as time barred by the statute of limitations.

On May 26, 1988, Judge Kowalski denied the City's motion to dismiss the amended complaint, denied the City's motion for summary judgment, and granted Hyon partial summary judgment on the issue of liability.

On March 16, 1989, after a trial on the issue of damages, a jury returned an award for Hyon of $3,797,000.

It is from this award of damages and from the circuit court's grant of summary judgment on the issue of liability that the City appeals.

## I

The City initially argues that Hyon's section 1983 claim is barred by the five-year statute of limitations. Specifically, the City contends that the alleged due process violation took place on January 11, 1977, and Hyon's suit for damages under section 1983 was instituted on April 14, 1982, more than five years after the violation.[3]

In Illinois, the "purpose of a statute of limitations is certainly not to shield a wrongdoer; rather it is to discourage the presentation of stale claims and to encourage diligence in the bringing of actions." (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 137, 334 N.E.2d 160.) Generally, a limitations period begins "when facts exist which authorize one party to maintain an action against another." (*Davis v. Munie* (1908), 235 Ill. 620, 622, 85 N.E. 943. See *Kozasa v. Guardian Electric Manufacturing Co.* (1981), 99 Ill. App. 3d 669, 673, 425 N.E.2d 1137.) Thus, a plaintiff's cause of action accrues at the time its interest is invaded; the mere fact that the extent of its damages is not immedi-

---

[3]At the time of the commencement of this suit, the applicable statute of limitations for section 1983 actions was five years. See *Beard v. Robinson* (7th Cir. 1977), 563 F.2d 331, 336-38.

ately ascertainable does not postpone the accrual of a plaintiff's claim. *Del Bianco v. The American Motorists Insurance Co.* (1979), 73 Ill. App. 3d 743, 747, 392 N.E.2d 120.

■■■ Where a tort involves a continuing or repeated injury, however, the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease. (*City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 364, 300 N.E.2d 331.) A continuing violation, however, is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. (*Ward v. Caulk* (9th Cir. 1981), 650 F.2d 1144.) Moreover, "where there is but one overt act from which subsequent damages may flow, it is held that the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature" of the injury. *Austin v. House of Vision, Inc.* (1968), 101 Ill. App. 2d 251, 255, 243 N.E.2d 297.

In the instant case, the City maintains that the single act of sealing the incinerator does not comprise a "continuous" injury to Hyon. In support of its contention that Hyon's cause of action accrued at the moment its incinerator was sealed, the City relies upon several cases: *Ward v. Caulk* (9th Cir. 1981), 650 F.2d 1144; *Pontarelli Limousine, Inc. v. City of Chicago* (N.D. Ill. 1989), 704 F. Supp. 1503; *Illinois National Bank & Trust Co. v. City of Rockford* (1950), 406 Ill. 11, 92 N.E.2d 166; *Kozasa v. Guardian Electric Manufacturing Co.* (1981), 99 Ill. App. 3d 669, 673, 425 N.E.2d 1137 ("The statute of limitations begins to run when facts exist which authorize the bringing of an action"); and *Austin v. House of Vision, Inc.* (1968), 101 Ill. App. 2d 251, 255, 243 N.E.2d 297 ("where there is but one overt act from which subsequent damages may flow, *** the statute begins to run on the date the defendant invaded the plaintiff's interest").

In *Pontarelli*, a limousine company sued the City of Chicago for depriving them of their livery license without due process; the company asserted that the City's violation continued until the City allowed them to use a dispatch booth. The court, however, found that "the plaintiff's claim that the system deprived them of property *** without due process of law clearly accrued on the date the livery dispatch system prohibiting them from using the dispatch booths went into effect." (*Pontarelli Limousine, Inc. v. City of Chicago*, 704 F. Supp. at 1510.) The court further held that "the loss of a property right accrues at the moment the property right is lost." *Pontarelli Limousine, Inc. v. City of Chicago*, 704 F. Supp. at 1510.

The City also relies upon *Illinois National Bank & Trust Co. v. City of Rockford* (1950), 406 Ill. 11, 92 N.E.2d 166, for the proposition

that damages are ascertainable on the date of the discreet act. In *Illinois National Bank*, the plaintiff brought suit for damages resulting from the loss of use of property abutting a public alley. The defendant city had raised the grade of the surrounding streets, but not the alley, thereby prohibiting any traffic into the alley. The plaintiff argued that the suit was not barred by the statute of limitations because the city's failure to keep the alley in use was a continuing violation. The court disagreed, holding that the damage occurred when construction was completed. *Illinois National Bank v. City of Rockford* (1950), 406 Ill. 11, 23, 92 N.E.2d 166.

In *Ward v. Caulk* (9th Cir. 1981), 650 F.2d 1144, the plaintiff brought a suit for damages against his former employer, alleging numerous statutory and constitutional violations. He argued that the subsequent harm (16 months of unemployment) was due to the defendant frustrating his job effort and, thus, was a continuing violation. The court, however, held that continuing nonemployment resulting from an original action was not a continuing violation; "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Ward v. Caulk*, 650 F.2d at 1147.

In response, Hyon argues that the City's violation of its due process was a continuing violation which did not end until December 1977, when the City removed the seal. Hyon maintains that the circuit court properly held the due process violation to be a continuing violation when it stated:

"My ruling was that the conduct of the City on January 5th by refusing to issue a operating permit without any type of theory and, then, subsequently closing or sealing the Hyon Waste Management incinerator was really part and parcel of one continuing violation of due process, one act."

Notwithstanding the City's contention that the alleged violation was not continuing, Hyon argues that the act of sealing its incinerator was not a separate and completed wrong but simply the first step in a course of wrongful conduct that continued until the seal was removed. (See *Taylor v. Meirick* (7th Cir. 1983), 712 F.2d 1112.) For support, Hyon relies upon *Poe v. Lynchburg Training School & Hospital* (W.D. Vir. 1981), 518 F. Supp. 789, 794 ("[s]ince the alleged deprivation is of a continuing nature, the action *** is obviously not time barred"); *Hampton v. Hanrahan* (N.D. Ill. 1981), 522 F. Supp. 140, 143 ("[w]here the conspiracy is 'continuous' the limitations period does not begin to run until the final overt act causing injury is completed"); and *City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill.

App. 3d 359, 364, 300 N.E.2d 331 ("[w]here a tort involves a continuing or repeated injury, the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease").

In *Rock Falls*, the defendant city and its mayor had continuously engaged in various acts of tortious interference with the utilization of plaintiff's property over a period of three years. Accordingly, the court held that the violation of plaintiff's rights was a continuing violation that did not cease until the date of the last injury or when the tortious acts ceased. *City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill. App. 3d at 364.

In both *Poe* and *Hampton*, the courts held that the statute of limitations did not begin to run until continuing wrongs ceased. In *Hampton*, the court held that the continuing wrong consisted of three conspiracies, the first was the carrying out of a raid, and the other two were cover-ups of the raid. (*Hampton v. Hanrahan* (N.D. Ill. 1981), 522 F. Supp. 140.) In *Poe*, the continuing violation was the failure of the defendant to notify the plaintiffs of their involuntary sterilization. *Poe v. Lynchburg Training School & Hospital*, 518 F. Supp. 789.

■ In the instant case, by contrast to those cases offered by Hyon, the City sealed Hyon's incinerator only once. Rather than a series of acts, the act of sealing the incinerator was a single, discreet event. Although Hyon attempts to portray the sealing of the incinerator as a continuous violation, we find that any alleged damages resulting from the City's act were instead continued ill effects from a single alleged due process violation. Because a continuing violation is occasioned by continuing unlawful acts and not from the continued ill effects from an initial violation, Hyon's complaint, filed more than five years after the City sealed its incinerator, is time barred.

## II

Notwithstanding our disposition of the first issue, we find it salutary to address the City's contention that Hyon did not have a protected property interest in operating its incinerator. Specifically, the City maintains that Hyon did not have a valid operating permit or a valid expectation of one. Accordingly, the City argues that Hyon did not have a protected property interest in receiving a permit to operate or in operating its incinerator. See *Kraft v. Jacka* (9th Cir. 1989), 872 F.2d 862.

■ As a threshold requirement to a due process claim, the plaintiffs must demonstrate that they have a protected property or liberty interest. (*Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 569-72, 33 L. Ed. 2d 548, 556-58, 92 S. Ct. 2701, 2705-06.) These

property rights are "not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law \*\*\*." (*Board of Regents v. Roth*, 408 U.S. at 577, 33 L. Ed. 2d at 561, 92 S. Ct. at 2709.) "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (*Board of Regents v. Roth*, 408 U.S. at 577, 33 L. Ed. 2d at 561, 92 S. Ct. at 2709.) Accordingly, procedural protection of property "is a safeguard of the security of interests that a person has already acquired in specific benefits." *Board of Regents v. Roth*, 408 U.S. at 576, 33 L. Ed. 2d at 560, 92 S. Ct. at 2708.

In the instant case, the City maintains that Hyon never acquired the permits necessary to operate an incinerator and, thus, has no expectation or interest in such a permit. Consequently, the City's refusal to grant an operating permit and its seal on the incinerator do not violate Hyon's property interest.

For support, the City relies upon *La Salle National Bank & Trust Co. v. City of Chicago* (1984), 128 Ill. App. 3d 656, 470 N.E.2d 1239 (holding that a permit to connect to municipal sewers is a license but not a vested right), and *Kurtzworth v. Illinois Racing Board* (1981), 92 Ill. App. 3d 564, 415 N.E.2d 1290 (an occupational license conferred by the Illinois Racing Board constitutes a property interest). The City distinguishes the cases it cites from the instant case by arguing that, in the instant case, Hyon never held a permit to operate.

■ In the instant case, Hyon operated its incinerator, albeit without an operating permit, against the provisions of the agreement with the City. Moreover, based upon the agreement that it had with the City, Hyon had no expectation of receiving operating permits for its facility unless it complied with the terms of the agreement. (See *Reed v. Village of Shorewood* (7th Cir. 1983), 704 F.2d 943; *Ciechon v. City of Chicago* (7th Cir. 1982), 686 F.2d 511.) Consequently, because Hyon was unable to comply with the agreement and because the Department notified Hyon of its noncompliance, Hyon did not have a protected property interest within the purview of the constitution in operating its facility.

The September 1, 1976, agreement between the Department and Hyon stipulated that Hyon was required to reduce its drum storage to 1,000 and clearly mark the drums with their contents; the agreement further stipulated that Hyon was to take immediate steps to eliminate odors, to stop accepting wastes if it was unable to correct its odor

problems, and to operate the plant so as not to create environmental problems. The agreement also provided that installation permits would be issued to Hyon for 90 days, after which an inspection would be made prior to the issuance of an operating permit; if Hyon failed to comply with the agreement, the City could order it to stop accepting wastes.

Despite the clear mandates of the agreement, Hyon was unable to comply. Numerous citations were issued to Hyon for violating environmental standards; further, Hyon continued to accept wastes and burn wastes in its incinerator notwithstanding its lack of an operating permit.

On January 3, 1977, the City inspected Hyon's facility in accordance with the agreement, and on January 5, 1977, the City informed Hyon that it was denying operating permits because Hyon had no effective means to control the smoke and odor problems.

We therefore find that Hyon has not demonstrated that it has a protected property interest in operating its incinerator. The agreement between the City and Hyon clearly stipulated that, prior to issuance of any permits of operation, Hyon must comply with all the terms of the agreement. Because Hyon failed to comply with the terms and because Hyon was made aware of its noncompliance, Hyon did not have a "legitimate claim of entitlement" in receiving a permit to operate or in operating its incinerator.

Although the City presents several other issues for our review, our determination that the action is barred by the applicable statute of limitations and that Hyon did not have a protected property interest is dispositive of this appeal. It is therefore unnecessary to address the additional issues raised.

The judgment of the circuit court of Cook County is reversed and remanded with directions to dismiss the cause.

Reversed and remanded with directions.

SCARIANO, P.J., and HARTMAN, J., concur.