Choh–Ying GEDDES, and Larry G. Geddes Plaintiffs,

v.

COUNTY OF KANE, Michael McCoy Philip Bus, the Kane County Board, and the Kane County Development Department, Defendants.

No. 98 C 7722.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 7, 2000.

John R. Wimmer, Downers Grove, IL, Joseph M. Williams, North Aurora, IL, for Plaintiffs.

Patricia Johnson Lord, Office of the Kane County State's Attorney, Geneva, IL, James G. Sotos, Hervas, Sotos, Condon & Bersani, P.C., Itasca, IL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

The plaintiffs, landowners in Kane County, sued defendant Philip Bus, Director of the Kane County Development Department, due to his actions in connection with their rezoning request. Mr. Bus moves to dismiss all of the plaintiffs' claims against him. For the following reasons, the motion is granted in part and denied in part.

### I. *Background*

Plaintiffs Choh–Ying (Amy) and Larry G. Geddes, who are married, own approximately 16.5 acres of land in Kane County, Illinois. On November 29, 1996, the Geddeses sought to have their land rezoned from "F" property, which under the Kane County Zoning Ordinance refers to land generally zoned for farming, to F2 property which permits other uses of the property, so they could open an organic garden center. They filed a rezoning request with the Kane County Development Depart-

ment (the "Department") and appeared at its December 2, 1996 hearing. During this hearing, Mr. Bus, the Director of the Department, asked Mrs. Geddes if she was Chinese and spoke and understood the Chinese language. Mr. Bus then asked Mrs. Geddes if she was going to "kowtow to him as Director of Development", which she apparently refused to do. Thereafter, Mr. Bus informed the Geddeses that their petition was unacceptable. The Geddeses submitted a revised and ultimately a second revised petition for rezoning, which was recommended for approval by the Department's technical staff without condition or stipulation on February 14, 1997. In a February 20, 1997 letter, Shodeen, Inc., a real estate developer involved in much of the development around the Geddes' property, raised questions about their zoning request. When the Geddeses met with Department personnel on July 7, 1997, Mr. Bus screamed at the couple and rejected his technical staff's recommendation and the Geddes' request without debate. He also allegedly stated, "I want more land from the Geddes."

On November 25, 1997, the Geddeses submitted a substantially modified version of their petition, drastically reduced in scope and this time seeking only to rezone 3.44 acres of their land to F2 status. This request was granted by the Department provided the Geddeses dedicate 24 feet of their eastern property frontage for a public right of way, which would provide access to certain Shodeen-developed real estate projects. On January 13, 1998, the Kane County Board, upon recommendation from the Department, adopted the ordinance granting the Geddes' rezoning petition contingent upon the dedication of the strip of property for a public right-of-way.

## II. Standard of Review

When considering a motion to dismiss, I accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 493 (7th Cir.1998) (citations omitted). A complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Id.*

## III. Discussion

The Geddeses complain that in forcing them to give up part of their land in order to rezone, Mr. Bus' actions constituted (1) a "taking" without just compensation under the U.S. Constitution, (2) a violation of the equal protection clause, (3) inverse condemnation under state law, and (4) intentional infliction of emotional distress.

### A. Takings and Inverse Condemnation Claims

 The Geddeses concede that they have not exhausted their remedies under state law, so their federal takings claim must be dismissed. *See Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)(constitutional takings claim not ripe until respondent sought compensation through the state's procedures). Having acknowledged this, plaintiffs also sue for inverse condemnation under Illinois law, which Mr. Bus seeks to dismiss for lack of subject matter jurisdiction.[1] Mr. Bus is wrong because the plaintiffs have adequately stated an equal protection claim— for reasons stated below—over which I clearly have federal question jurisdiction, so I may also exercise jurisdiction over the related state law claims. Mr. Bus next asserts that there was no inverse condem-

---

1. Although they use the label "eminent domain" in their complaint, the proper nomenclature is inverse condemnation, which permits a landowner to recover just compensation for the taking of property when condemnation proceedings have not been instituted. This matters not for practical purposes, as "[h]aving specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint." *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir.1997).

nation because his actions and the ordinance do not deny the Geddeses an economically viable use of their land. *See Tim Thompson, Inc. v. Village of Hinsdale*, 247 Ill.App.3d 863, 884, 187 Ill.Dec. 506, 617 N.E.2d 1227 (1993). However, the dedication of land to the County would certainly deny them ownership and economic use of that particular parcel of property and could conceivably impact the economic viability of the remainder of their land. Although this may appear doubtful given the intended use of the land, it is possible, and the plaintiffs must be given an opportunity to prove it, so I cannot dismiss their claim.

Finally, Mr. Bus attempts to incorporate, solely by reference, the arguments raised by the other Kane County defendants in their motion to dismiss. Because I have granted the plaintiffs an extension until April 3, 2000 to respond to the Kane County defendants' motion, it is unfair to force the plaintiffs to respond to these allegations now and I cannot consider those arguments without the plaintiffs' response. I therefore deny Mr. Bus' motion to dismiss the plaintiffs' inverse condemnation claims, although I may grant Mr. Bus leave to refile his motion to dismiss on this single issue after the plaintiffs have responded to the other defendants' motion.

## B. *Equal Protection Claims*

The plaintiffs claim that the events leading up to and including Kane County's adoption of the ordinance rezoning their property only if they dedicate a significant portion of their land violate their constitutional right to equal protection. They argue that they were treated worse than other landowners because of Mrs. Geddes' Chinese nationality and Mr. Bus' irrational dislike of them. In support of their contention, they offer that (1) the actions of the Department violated its own policy and ordinances, and (2) Mr. Bus' comments and treatment of the Geddeses indicated his animus towards them.

Mr. Bus argues that the equal protection count is simply a disguised takings claim and as such should be dismissed as unripe. Although the Seventh Circuit is indeed quick to recast such undercover zoning claims, it has held that, unlike due process claims, bona fide equal protection claims are not postponed under the "ripeness" doctrine, i.e. they may be brought before state inverse condemnation proceedings have been exhausted. *See Hager v. City of West Peoria*, 84 F.3d 865, 870 (7th Cir.1996)(bona fide equal protection claims arising from land-use decisions can be made independently from a takings claim and without being subject to *Williamson* ripeness); *Forseth v. Village of Sussex*, 199 F.3d 363, 2000 WL 10266 (7th Cir.2000)(same). Here, the plaintiffs have alleged a legitimate equal protection claim.

The legislative authority of municipalities to adopt and enforce zoning ordinances is derived from the states' police power and is not to be narrowly confined; however, it is not without limits. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 5–8, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). Zoning legislation violates the equal protection clause of the Constitution if it is based upon a suspect classification, impinges upon a fundamental right, or is manifestly unreasonable and arbitrary. *Id.* at 6, 7, 94 S.Ct. 1536. The Geddeses allege that Mr. Bus acted on two of these impermissible motives. First, because Mrs. Geddes is Chinese, her zoning request, despite initial recommendation from the Department's own technical expert, was denied and she and her husband forced to cede a significant portion of their property without compensation and in contravention of the County's stated policy. This type of unequal treatment by a governmental body on the basis of a citizen's membership in a suspect class states a classic equal protection claim.

Second, the Geddeses allege that the decision to refuse their zoning request was also due to Mr. Bus' irrational ill will towards the couple. *See e.g. Esmail v. Ma-*

*crane*, 53 F.3d 176, 180 (7th Cir.1995)(applicant stated equal protection claim by alleging unequal treatment with respect to denial of renewal license due solely to malicious conduct and vindictive campaign against him by mayor); *Olech v. Village of Willowbrook*, 160 F.3d 386 (7th Cir.1998)(complaint alleging that "substantial ill will" caused the Village to depart from its normal land use policy). The Geddeses can therefore succeed if they can prove that the zoning was a "governmental action wholly impossible to relate to legitimate governmental objectives." *Olech v. Village of Willowbrook*, 160 F.3d 386, 387–88 (7th Cir.1998). I must assume these allegations are true for purposes of this motion. If proven, they could demonstrate that the actions of Mr. Bus were improper and "wholly unrelated to any legitimate state objective," *see Esmail*, 53 F.3d at 180, so dismissal is inappropriate. Thus, the Geddes' equal protection claim based on Mr. Bus' alleged conduct is independent from its takings claim and accordingly, is not subject to *Williamson's* ripeness requirements.

### C. *Intentional Infliction of Emotional Distress*

 The parties concede that the claim of intentional infliction of emotional distress against Mr. Bus is governed by the statute of limitations established in the Local Governmental and Governmental Employees Tort Immunity Act, which bars any "civil action" against a "local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8–101 (1995). Emotional distress claims accrue on the date that the defendant committed the act that allegedly caused the plaintiff's distress. *Id.* Mr. Bus argues

that the plaintiffs' complaint is thus time-barred because it was filed well over one year after the acts which plaintiff complains of, i.e. the statements Mr. Bus made about Mrs. Geddes' nationality and Mr. Bus' outbursts during the hearing. The Geddeses, however, claim they suffered ongoing injury because of Mr. Bus' continuous inflictions of emotional harm, which concluded in the racially charged decision to deny them the zoning change in the manner requested. *See, e.g. Hyon Waste Management Services, Inc. v. City of Chicago*, 214 Ill.App.3d 757, 762–763, 158 Ill. Dec. 335, 574 N.E.2d 129 (1st Dist.1991) (citations omitted)(where a tort involves a continuing or repeated injury, the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease). However, a continuing violation is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. *Id.* Therefore, to be within the limitations period, the acts within the period must be themselves sufficient to constitute intentional infliction of emotional distress. In order for the Geddes' claim not to be time-barred, therefore, the passing of the ordinance must be itself sufficient to constitute a violation because it is the only act within the limitations period.

Intentional infliction of emotional distress requires a severe act to be actionable.[2] "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765 (Ill.1976), and the distress inflicted so severe that no reasonable person could be expected to endure it. *McGrath v. Fahey*, 126 Ill.2d 78, 86, 127 Ill.Dec. 724, 533

---

**2.** In order to state a cause of action under Illinois law for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew there was a high

probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. *Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir.1997), *citing McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806 (Ill.1988).

N.E.2d 806 (Ill.1988). This conditional re-zoning, even if racially motivated, does not include allegations of the kind of extreme and outrageous conduct which would be necessary to prevail on this claim. *See, e.g. Oates v. Discovery Zone,* 116 F.3d at 1174–75 (7th Cir.1997); *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993). Mr. and Mrs. Geddes have failed to allege sufficient facts or the necessary degree of outrageousness to state a claim within the limitations period against Mr. Bus for intentional infliction of emotional distress.

Mr. Bus' motion to dismiss is GRANTED as to Counts I (takings) and IV (intentional infliction of emotional distress) and DENIED as to Counts II (equal protection) and III (inverse condemnation).