THE CITY OF ROCK FALLS, Plaintiff and Counterdefendant-Appellee, *v.* CHICAGO TITLE & TRUST COMPANY, as Trustee, Defendant—(WILLIAM C. JEROME, Defendant and Counterplaintiff-Appellant, *v.* LOUIS J. PIGNATELLI, Counterdefendant-Appellee.)

(No. 72-247; ▮▮▮▮▮▮▮▮▮▮)

Third District—August 2, 1973.

*Rehearing denied August 28, 1973.*

Walter E. Trittipo, of Chicago, and Nelson, Weinstine & Kilgus, of Morrison, for appellant.

Donald E. Blodgett, of Rock Falls, for appellee.

Louis J. Pignatelli, *pro se.*

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Whiteside County, Illinois, which dismissed the third amended counterclaim of William C. Jerome, one of the defendants, against the City of Rock Falls, the plaintiff, and Louis J. Pignatelli, its former mayor.

The City of Rock Falls on April 28, 1970, filed a complaint for authorization to repair or demolish a building alleged to be dangerous and unsafe. Title was held in trust by Chicago Title & Trust Company, Jerome was the trust beneficiary, and both of them were made defendants. Jerome filed an answer and counterclaim, and subsequently, after motions, hearings, briefs, and adverse rulings, filed an amended counterclaim, a second amended counterclaim, and a third amended counterclaim. Pignatelli was joined as an additional counterdefendant on September 3, 1970. It is from the order dismissing Jerome's third amended counterclaim, directed against the City and Pignatelli, that this appeal is taken.

The issues presented are whether the third amended counterclaim states a cause of action under Illinois law for the tort of interference, whether the defendants are protected by the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, sec. 1—101 *et seq.*), and whether suit is barred by the limitations provision of that Act or by the general five-year statute of limitations. Ill. Rev. Stat. 1971, ch. 83, sec. 16.

The challenged counterclaim alleges that Pignatelli, while mayor and chief executive officer of the City of Rock Falls, made an offer in February of 1951 to purchase in his own name the property involved in this case, but Jerome acquired the property by making a higher offer in May of 1951; that because Pignatelli was not able to obtain the property, he, and the City through his acts, deliberately, wilfully, and maliciously pursued a course of conduct which prevented Jerome from obtaining the business advantages he should have derived from his equitable ownership of the premises as trust beneficiary; that this wrongful conduct continued from June of 1961 until May 1, 1969, when Pignatelli ceased to hold office as mayor; that many wrongful acts besides those specifically mentioned in the counterclaim were committed by Pignatelli and officers and employees under his control but were concealed from Jerome; that Pignatelli publicly ridiculed one of Jerome's plans, which was to convert the building into a motel-hotel, and indicated that anyone buying the

property would not receive cooperation from the City or any of its departments and would "probably find it difficult to function"; that the city clerk refused to issue applications for building permits to agents of Jerome, he said he could do nothing for them, and Pignatelli refused to allow the applications to be issued; that prospective lessees were told by Pignatelli that the building was not available, and one of the prospective lessees was told by Pignatelli that he would not allow Jerome to use the building; that a prospective user was told by Pignatelli that city water and electric service would not be provided by the City to the building and permits would not be issued to allow conversion of the building to a light manufacturing use; that an agent of Jerome who was attempting to repair leaks in the roof of the building was told by officials of the City to halt the repairs, and the City's building inspector told Jerome that no permits for repairs or remodeling would be issued to him and that Pignatelli had forbidden their issuance; that the City's electrical superintendent informed Jerome that Pignatelli had ordered him and other city officials not to authorize utilities to Jerome for the building; that the city attorney, on Pignatelli's instructions, told Jerome that the ordinances he had prepared for the City were not kept in any particular place and he did not know where Jerome could find the City's ordinances dealing with building permits and utilities; that on various occasions during 1966, 1967, 1968 and 1969, when Jerome had financial and civic backing for proposals to utilize his building but needed licenses, permits, and utilities, Jerome or an agent of his was told by Pignatelli and other city officials that no applications for the licenses, permits, and utilities would be accepted, considered, or granted so long as Jerome owned an interest in the premises; and that because of the continuing misconduct of Pignatelli and the City, Jerome was continuously deprived of the profits he would otherwise have made from the premises.

The tort action for interference developed at an early date to give recognition to the principle that a person's business is property which is entitled to protection from harm by another who is not acting in the exercise of some right such as the right to compete for business. Annot., 9 A.L.R.2d 228, sec. 2.

The theory of the tort of interference, it is said, is that the law draws a line beyond which no member of the community may go in intentionally intermeddling with the business affairs of others; that if acts of which complaint is made do not rest on some legitimate interest, or if there is sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated, the ensuing loss should be redressed; and that the line of demarcation between permissible behavior and interference

reflects the ethical standards of the community. (45 Am.Jur.2d, Interference sec. 1.) The elements which establish a prima facie tortious interference are the existence of a valid business relationship (not necessarily evidenced by an enforceable-contract) or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. The interest protected is the reasonable expectation of economic advantage. *Id.* sec. 50.

■■ The tort of interference has long been recognized in Illinois. In *Doremus v. Hennessy,* 176 Ill. 608, 615, the Illinois Supreme Court said: "Every man has a right, under the law, as between himself and others, to full freedom in disposing of his own labor or capital according to his own will, and any one who invades that right without lawful cause or justification commits a legal wrong, and, if followed by an injury caused in consequence thereof, the one whose right is thus invaded has a legal ground of action for such wrong."

■■ It is established in Illinois, also, that the damage or injury can be loss of potential income from property, and an existing contract is not required. (*Pendleton v. Time, Inc.,* 339 Ill.App. 188, 194.) As the comment to section 766 of the Restatement of Torts explains, "The liability for inducing breach of contract is now regarded as but one instance, rather than the exclusive limit, of protection against unjustified interference in business relations."

■■ The counterclaim adequately states a cause of action, we believe, for interference with Jerome's utilization of the property of which he was beneficial owner under the trust. Our review of the counterclaim's recital of refusals to issue applications, misstatements about availability of the property, threats concerning utilities, and other patent abuses of public office causes us to find little appeal in the argument that no wrongful conduct is alleged, that the conduct described was justified or privileged, or that the allegations are merely conclusions or conjecture. Jerome is entitled to the reasonable intendments of the language used. *W. P. Iverson & Co. v. Dunham Mfg. Co.,* 18 Ill.App.2d 404, 422.

■■ The defendants are not protected, we believe, by Sections 2—104 and 2—206 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85 secs. 2—104, 2—206), which deal with the denial of permits and licenses by persons who are authorized to determine whether they should be issued or denied. These sections do not cover the refusal of applications, nor the bulk of the other misconduct alleged. Furthermore, it has been questioned whether

these sections extend to cases where "a public official `*` `*` `*` maliciously or intentionally misuses the powers of his office." *Young v. Hansen,* 118 Ill.App.2d 1, 9.

■■ Jerome's right to recover from the City is not barred by limitations because the City first sued Jerome. The Illinois Supreme Court has stated that sections 8—101, 8—102 and 8—103 of the Tort Immunity Act and section 17 of the Limitations Act are to be construed together so as to allow a defendant to assert any claim he might have arising out of the occurrence for which he is being sued. (*Helle v. Brush,* 53 Ill.2d 405.) It appears to us that Jerome's counterclaim alleging, among other things, that repairs to his building were not allowed, can fairly be said to arise out of the same occurrence as the City's complaint for leave to repair or demolish the building because of its having become dangerous and unsafe through disrepair.

■■ Jerome's claim against Pignatelli is subject to the general five-year statute of limitations, section 15 of the Limitations Act, which applies to "all civil actions not otherwise provided for." The counterclaim alleges that Pignatelli's misconduct, including acts known and described and acts not known to Jerome, continued until May 1, 1969. Where a tort involves a continuing or repeated injury, the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease. (*Maclaskey v. Macartney,* 324 Ill.App. 498, 510; 54 C.J.S., Limitation of Actions sec. 169; 51 Am.Jur.2d, Limitation of Actions sec. 135; 25 I.L.P., Limitations sec. 53.) Therefore suit against Pignatelli is not barred.

Accordingly, the order dismissing the third amended counterclaim is reversed and the case is remanded to the Circuit Court of Whiteside County for further proceedings not inconsistent with this opinion.

Reversed and remanded.

STOUDER, P. J., and SCOTT, J., concur.