SECOND DIVISION

November 20, 2001 

No. 1-00-1586

JENNIFER PAVLIK, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

) 

)

BRUCE KORNHABER, PhD. individually and in his )

capacity as President and CEO of KORNHABER, ) The Honorable 

MANKA & ASSOCIATES, LTD., d/b/a COMMUNITY ) Sophia Hall,

COUNSELING ASSOCIATES; and KORNHABER, ) Judge Presiding.

MANKA & ASSOCIATES, LTD., d/b/a COMMUNITY )

COUNSELING ASSOCIATES, )

)

Defendants-Appellees. )

JUSTICE GORDON delivered the opinion of the court:

Plaintiff Jennifer Pavlik appeals from the circuit court's dismissal of her complaint against defendants Bruce Kornhaber and Community Counseling Associates (CCA) under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1996)).  The circuit court held that because Pavlik alleged only personal injuries, her negligence, intentional infliction of emotional distress, nuisance, fraud, and breach of fiduciary duty counts were all barred by the two-year statute of limitations set out in section 13-202 of the Code of Civil Procedure (735 ILCS 5/13-202 (West 1996)).  In this appeal, Pavlik argues that the residual 5 year limitations period (735 ILCS 5/13-205 (West 1996)) applies to her nuisance, fraud, and breach of fiduciary duty counts and that defendant perpetrated actionable conduct against her within the two-year limitations period for the negligence and intentional infliction of emotional distress counts.  For the reasons stated below, we reverse the circuit court's holding on the intentional infliction of emotional distress counts, and affirm the court's dismissal of the negligence, nuisance, fraud, and breach of fiduciary duty counts. 

BACKGROUND

Defendant Bruce Kornhaber is a principal and professional staff member of Kornhaber, Manka & Associates, Ltd., doing business as Community Counseling Associates (CCA), a company that contracts with counselors, therapists and licensed professionals to provide mental health services to the public.  According to Kornhaber's affidavit, attached to his section 2-619 motion to dismiss, he is not a medical doctor, nor is he a clinical psychologist, nor a social worker.  Kornhaber has a Ph.D. in counseling and psychology, is certified by the National Board of Certified Counselors, and works as a therapist.  The parties do not dispute that in 1982, Kornhaber undertook two therapy sessions with Pavlik, then a teenager, through CCA.  In June of 1994, Pavlik was hired by CCA as a therapist in her first professional position after receiving her Master's of Social Work.  Pavlik's mother was also employed at CCA at this time.  

Pavlik brought suit against both Kornhaber and CCA on November 1, 1996.  As amended, the complaint alleges a total of nine counts, the first five against Kornhaber individually and the last four against CCA.  Count I alleges negligence by Kornhaber in conducting therapy with Pavlik during 1994.  Count II claims nuisance arising out of Kornhaber's alleged misrepresentation of himself as a psychologist and clinical psychologist in violation of the Clinical Psychologist Licensing Act (225 ILCS 15/1 et seq. (West 1996)).  Count III alleges that Kornhaber committed fraud by this misrepresentation of his credentials; count IV alleges breach of fiduciary duty and count V sounds in intentional infliction of emotional distress.  Counts VI and VII allege both 
respondeat superior
 and direct corporate negligence against CCA.  Count VIII alleges direct nuisance by CCA and count IX alleges direct intentional infliction of emotional distress.  

In the common facts section of her complaint, Pavlik states that as a requirement of her employment as a fledgling therapist with CCA, she received both professional supervision and counseling from Kornhaber.  During the course of this dual relationship, Pavlik alleges that Kornhaber initiated a campaign of egregious and offensive sexual overtures and used his position as a therapist and employer in an attempt to get her to submit to his desires.  Pavlik's complaint alleges that as a result of Kornhaber's behavior she became confused, anxious, and depressed, that her self-esteem plummeted, that her trust in the psychotherapeutic process was impaired, that her career development was impeded, and that her general psychological condition worsened.  By her complaint, Pavlik sought money damages to compensate for these harms.

In support of her allegations, Pavlik's pleadings include at least 14 different memos, letters, and handwritten notes addressed from defendant which make various sexual suggestions, requests, and demands.  An August 6, 1994, "Weekly Status Meeting" memo from Kornhaber asks Pavlik to bring an "Open Mind, Warm Heart & Heavy Breathing" to their next "FALLING IN LOVE WITH YOU MEETING."  An August 14, 1994, letter with a CCA header discusses his "clitoral envy" and states that "under the terms of the contract you will be responsible to limit your orgasms to a one-to-one ratio in exchange for terms such as travel expenses, raises, vacation pay, etc."  Typed undated correspondence from Kornhaber elaborates on an infatuation with her underarms and the inside of her nose.  Pavlik alleged that during one face to face encounter, defendant actually stuck his tongue in her nose.  In addition, Pavlik's pleadings include a large packet of explicit advertisements for "erotic phone fantasies," including pictures, allegedly sent to her by Kornhaber.  Some of the notes from defendant are addressed to "Jen Pelvic."  The medical affidavit attached to plaintiff's complaint as required under section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 1996)), details that numerous times throughout her employment Kornhaber required Pavlik to stay in the office after work hours and to meet him outside the office.  These meetings allegedly involved unwanted sexually explicit discussions and unwelcome and offensive touching or gestures.  Kornhaber allegedly subjected Pavlik to long discussions about intimate relations with his wife and explicit fantasies about Pavlik herself.  Pavlik's complaint indicates that from its inception she found this behavior offensive and unacceptable. 

According to the complaint, this behavior continued from July 1994, until Pavlik terminated her employment at CCA on November 1, 1994.  In Pavlik's answer to the bill of particulars demanded by defendants, she indicates that formal clinical supervision and psychotherapeutic counseling with Kornhaber took place two or three times per week from July 27 through October 17, 1994, at various locations including the CCA offices, restaurants, and Kornhaber's home.  Pavlik further admits that October 17 was the last date of any formal psychotherapeutic counseling by Kornhaber.  Based upon this statement, two years and fourteen days passed between the date of the last psychotherapeutic counseling session and Pavlik's initial filing on November 1, 1996.

Pavlik's complaint also includes a November 4, 1994, letter sent by Kornhaber to Pavlik and her mother which, while admitting "I believe I must be some, all or part of, the reason for your feeling the need to depart so abruptly," simultaneously insists that he had "been sensitive" to Pavlik's needs and "tried to accommodate you and your issues."  Kornhaber went on to say, "[s]ince I have no way of knowing for sure, I will assume that my 'zaniness' confrontations and unwillingness to minimize conflict in a personal relationship contributed to your decision Jennifer."  The note concluded by saying: "In any event, it's clear that a short time ago that both of you felt good with me and the clinic. Suddenly over a three week period those positive feelings changed.  Although, I'm not sure about how all this happened, I am sure that I have grown to care about you both."  The note was signed "Sincere love."  On November 8, CCA sent a letter to Pavlik indicating that she had not followed proper procedures in terminating her employment and that her payroll check would be withheld until all such procedures were followed.  Pavlik's attempt to collect her past wages was unsuccessful and she subsequently pursued relief through the Illinois Department of Labor.  Two years later, in November 1996, the Department of Labor issued a wage payment demand ordering defendant to pay plaintiff sums owed her.  In her corrected second amended complaint, Pavlik also alleges that she had a phone conversation with Kornhaber on November 3, 1994, the contents of which were not disclosed.

Pavlik's initial complaint alleged one count each of negligence, nuisance, and fraud against Kornhaber, and one count of 
respondeat superior
 negligence, direct corporate negligence, and nuisance against CCA.  The trial court dismissed this complaint in May 1998 based on defendants' challenge to plaintiff's section 2-622 affidavit.  735 ILCS 5/2-622 (West 1996).  After two additional dismissals, plaintiff submitted her corrected second amended complaint, described in detail above, which is at issue in this case.  Defendant filed a motion to dismiss based both on the statute of limitations, under section 2-619, and on insufficiency of the pleadings, under section 2-615.  735 ILCS 5/2-615; 735 ILCS 5/2-619 (West 1996).  In the order being appealed here, the trial court held that all counts of the complaint were barred by the statute of limitations and granted defendants' section 2-619 motion to dismiss with prejudice.  Although the trial court entered no written opinion, the transcript of the hearing reveals that the trial judge also found that the allegations in the complaint were insufficient under section 2-615, but did not include this in the order because the section 2-619 ruling was fully dispositive.  This appeal followed. 

ANALYSIS

Standard of Review

We review 
de novo
 the dismissal of a complaint under section 2-615 (
Doe v. McKay
, 183 Ill.2d 272, 274, 700 N.E.2d 1018, 1020 (1998)) and section 2-619 (
Health Cost Controls v. Sevilla
, 307 Ill.App.3d 582, 586, 718 N.E.2d 558, 562 (1999)).  
Shaker and Associates, Inc. v. Medical Technologies Group, Ltd.
, 315 Ill. App. 3d 126, 131, 733 N.E.2d 865, 870 (2000).  "In ruling on a section 2-619 motion, a court must accept as true all well-pleaded facts in plaintiff's complaint and all inferences that can reasonably be drawn in plaintiff's favor."  
Hermitage Corp. v. Contractors Adjustment Co.
, 166 Ill.2d 72, 85, 651 N.E.2d 1132, 1139 (1995).  We will grant the motion to dismiss only if the plaintiff can prove no set of facts that would support a cause of action.  
Chicago Teachers Union, Local 1 v. Board of Education of City of Chicago
, 189 Ill. 2d 200, 206, 724 N.E.2d 914, 918 (2000).  Likewise, when the sufficiency of a complaint is challenged by a section 2-615 motion, all well-pleaded facts are taken as true and this court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted.  
Connick v. Suzuki Motor Co.
, 174 Ill.2d 482, 490-91, 675 N.E.2d 584, 588 (1996).

I. Negligence/Malpractice Count

In count I of her complaint, Pavlik contends that throughout the summer and fall of 1994  defendant Kornhaber negligently rendered therapeutic services to her which caused her to suffer anxiety, depression, and confusion.  According to Pavlik, Kornhaber's hybrid relationship with her as former therapist, present therapist and clinical supervisor was a deviation from the standard of care required of therapists and that his campaign of sexual overtures was a gross breach of the duty he owed her in these relationships.  In his motion to dismiss, Kornhaber counters that any alleged negligence occurred outside the two-year statute of limitations for personal injury actions.  In her brief on appeal, Pavlik responds that the continuing course of negligent treatment doctrine tolled the running of the statute of limitations and rendered the action timely.  We agree with defendant that any actions which may have constituted negligence or malpractice occurred outside the statute of limitations.

Count I is characterized intermittently by both plaintiff and defendant as a "malpractice" and a "negligence" claim.  Because plaintiff's first response to the statute of limitations defense is based specifically in malpractice precedent, we will begin our analysis within this branch of negligence jurisprudence.  Plaintiff does not dispute that the statute of limitations for this count runs two years from the time the cause of action accrued.  735 ILCS 5/19-202.  Nor does plaintiff dispute that the last formal session defendant conducted with her occurred on October 17, 1994: two years and fourteen days before plaintiff filed the instant suit.  Plaintiff urges this court to find however that she was the victim of a continuous and unbroken course of negligent treatment such that, under malpractice cases beginning with 
Cunningham v. Merrill Huffman
, 154 Ill.2d 398, 609 N.E.2d 321 (1993), the statute of limitations did not begin to run until the negligent treatment concluded.  Plaintiff argues that the negligent treatment did not conclude with her final formal session on October 17.  Instead, plaintiff asserts that the therapeutic relationship between her and defendant extended outside the formal "session" context and that in meetings, office interactions, and during the clinical supervision that continued through the end of her employment, Kornhaber misused the counseling relationship between them and misused therapeutic and counseling techniques in an attempt to further his sexual agenda.  Plaintiff thus concludes that the "negligent treatment" did not end anytime prior to defendant's November 4, 1994, letter to her.  We are not persuaded by plaintiff's efforts to bring her suit in line with this malpractice doctrine.

The 
Cunningham
 court developed the doctrine of continuing course of negligent treatment  to avoid the harsh results that can arise from the statute of repose (735 ILCS 5/13-212(a) (West 1996)), which bars medical malpractice suits four years from the date of the act causing the injury, regardless of when the plaintiff discovers it.  
Cunningham
, 154 Ill. 2d at 406, 609 N.E.2d at 325.  The 
court held that if the plaintiff can demonstrate (1) a continuous and unbroken course of negligent treatment, and (2) that the treatment was so related as to constitute one wrong, then the plaintiff may avoid the statute of repose.  
Cunningham
, 154 Ill. 2d at 406, 609 N.E.2d at 325.  The court recognized that this statute was designed precisely to protect physicians from the "long tail" liability exposure that the discovery rule exception to the statute of limitations created.   
Cunningham
, 154 Ill. 2d at 406, 609 N.E.2d at 325.  But because a patient is often forced to rely on whatever information the negligent doctor provides (
Hertel v. Sullivan
, 261 Ill. App. 3d 156, 161, 633 N.E.2d 36, 39 (1994)), the 
Cunningham
 court created a very limited exception to the statute of repose to alleviate its effect in specific cases.  
Cunningham
, 154 Ill. 2d at 406, 609 N.E.2d at 325.  In 
Cunningham
 itself, the court held that a plaintiff might be able to establish ongoing negligent gynecological treatment by physicians who serially implanted and then subsequently removed two contraceptive devices from her uterus.

We are not persuaded by the plaintiff's broad definition of the word "treatment" under which she attempts to capture communications between her and defendant after the October 17 session.  One court considering the applicability of the continuing negligent medical treatment doctrine has noted that it is inherently limited by two key words: "medical" and "treatment."   
Turner v. Nama
, 294 Ill. App. 3d 19, 30 689 N.E.2d 303, 311 (1997).  In the malpractice context, treatment is defined as " the action or manner of treating a patient," (
Turner
, 294 Ill. App. 3d at 30, 689 N.E.2d at 311) and "the application of remedies with the object of affecting a cure; therapy."  The American Heritage Dictionary of the English Language, 1367 (1981)
.  The 
Turner
 court held that failure to ensure that the decedent was notified of unfavorable test results was not an act of "treatment" within the plain meaning of the word and thus could not trigger the application of the 
Cunningham
 doctrine.  We share the 
Turner
 court's view that the word treatment operates to limit the application of the doctrine and that defining treatment to include a wide spectrum of communication would abrogate this function.  To the extent that this count is characterized as malpractice, keeping the context of formal treatment as a boundary for liability provides a meaningful and discernable point from which the statute of limitations can be calculated.  Interactions or communications that are not treatment may indeed be actionable (see the discussion of intentional infliction of emotional distress below) but not as malpractice.  

In the instant case, Pavlik's bill of particulars states that her last "psychotherapeutic counseling" session with defendant occurred on October 17, 1994.  We find plaintiff's admission of the date of the last session, offered before the statute of limitations issue fully arose in the trial court, to be the logical and reasonable mark of the end of her treatment.  Neither of the letters sent to plaintiff after that date, nor the wage dispute that later ensued can be captured by even a generous definition of treatment.
(footnote: 1)  We are therefore unpersuaded that the continuing course of negligent treatment doctrine brings plaintiff's suit within the statute of limitations.

Pavlik's next argument evolves out of her continuing course of negligent treatment claim, but sounds in the broader discourse of negligence, rather than malpractice.  Pavlik contends that she was obligated to enter into a therapeutic relationship with Kornhaber as a condition of her employment as a fledgling therapist.
(footnote: 2)  Pavlik claims that this relationship gave rise to a continuing duty of care which extended beyond the temporal limits of the formal therapeutic relationship, which ended on October 17, 1994.  Pavlik argues that Kornhaber breached this duty by his interactions with her through the November 3 phone call, the November 4 letter, the November 8 letter, and perhaps through the institution of a wage dispute which she alleges was designed solely to continue some form of contact with her
.  In essence, plaintiff posits that the therapeutic relationship is qualitatively different than other professional relationships with respect to the duty of care owed, in that 
any
 contact between patient and therapist can have therapeutic elements and therefore trigger the professional duty of care that applies to formal treatment.  

To establish negligence, plaintiff must plead and prove that defendant owed her a duty, that defendant breached that duty and that the breach was the proximate cause of plaintiff's injuries.  
Hills v.Bridgeview Little League Assn
, 195 Ill. 2d 210, 228, 745 N.E.2d 1166, 1178 (2001).  Illinois courts have recognized that therapists owe a duty to those to whom they provide therapy:

"we think that the very nature of the therapist-patient relationship * * * gives rise to a clear duty on the therapist's part to engage only in activity or conduct which is calculated to improve the patient's mental or emotional well-being, and to refrain from any activity or conduct which carries with it a foreseeable and unreasonable risk of mental or emotional harm to the patient."  
Horak v. Biris
, 130 Ill. App. 3d 140, 145, 474 N.E.2d 13, 17 (1985).  
See also
, 
Holladay v. Boyd
, 285 Ill. App. 3d 1006, 675 N.E.2d 262 (1996) (recognizing that psychiatrist had duty of care to patient); 
Corgan v. Mueling
, 143 Ill.2d 296, 307, 574 N.E.2d 602, 607 (holding that unregistered psychologist who held himself out as qualified to render counseling owed a duty of care to patient).

Although the pleadings do not allege that Kornhaber is a social worker, medical doctor, or registered psychologist, he is a Ph.D. and certified counselor and did, as revealed in well-pleaded facts, hold himself out as professional, qualified to render counseling and psychotherapy.  As such, Kornhaber should not be permitted to escape being held to a therapist's duty of care by failing to register or by configuring his credentials in a certain way.  We are thus satisfied that defendant had a professional duty of care as a therapist toward plaintiff to refrain from activity which carried a foreseeable and unreasonable risk of emotional harm.  

The cases recognizing a therapist's duty of care have also noted that therapy involves the phenomena of transference and countertransference.  The 
Horak
 court noted that 

"The 'transference phenomenon' * * * has been defined in psychiatric practice as 'a phenomenon * * * by which the patient transfers feelings towards everyone else to the [therapist]' * * * .  The mishandling of this phenomenon, which generally results in sexual relations or involvement between the psychiatrist or therapist and the patient, has uniformly been considered as malpractice or gross negligence in other jurisdictions * * * ." 
Horak
, 130 Ill. App. 3d at 146, 474 N.E.2d at 18 (quoting 
Aetna Life & Casualty Co. v. McCabe
, 556 F.Supp. 1342, 1346 (E.D. Pa. 1983)).

Accepting as we must all well-pleaded facts in the complaint as true, we find plaintiff has sufficiently alleged that defendant breached his duty by overtly and repeatedly pursuing sexual involvement with her during their therapeutic interactions.  

But the question remains: did this breach of duty occur within the statutory period?   Recognizing the significant impact such a breach may have on a person seeking therapy, the law must still ascertain the point at which this duty, and the therapists' liability as a professional practitioner, ends.  
Horak
, 
Holladay
, and 
Corgan
 all involve mishandling transference by inappropriate sexual behavior that occurs during the course of the therapeutic relationship.  The cases do not address the question of potentially inappropriate behavior after therapy ends.   Plaintiff cites no case law to support an extension of duty beyond the clear boundary of the treatment window.  We recognize that the proximity and continuity of the inappropriate behavior that allegedly occurred before and after the October 17 end of treatment reveals the inherent harshness in drawing such a bright line.  Legal duty, however, must have a boundary and even in the context of the highly complex therapeutic relationship, liability under the professional duty of care cannot be interminable.  Illinois case law indicates that the therapist's duty exists during the course of formal treatment.  
Horak 
130 Ill. App. 3d 140, 474 N.E.2d 13;
 
Holladay
, 285 Ill. App. 3d 1006, 675 N.E.2d 262; 
Corgan
, 143 Ill.2d 296, 307, 574 N.E.2d 602, 607.  We therefore find that plaintiff cannot establish that defendant owed her a duty as a therapist to refrain from potentially harmful conduct once the formal treatment relationship ended and thus that her negligence claim is barred by the statute of limitations.  This discussion is not oblivious to the fact that there may be a psychological impact from interactions that occur post-treatment which relate back to the relationship previously established in the therapeutic context.  That impact is reflected in our determination of plaintiff's intentional infliction of emotional distress count, rather than in the count pleading malpractice.  Moreover, an ongoing psychological dynamic which may survive the formal treatment period is suggested to a limited degree by statute.

Pavlik's pleadings contain a reference to the rules promulgated under the Clinical Psychologist Licensing Act (225 ILCS 15/1 et seq. (West 1996)) that define "Unethical, Unauthorized and Unprofessional Conduct," the commission of which may subject a practitioner to discipline.   68 Ill. Admin. Code 1400.80 (1996).  Specifically, these rules state that "[t]he commission of any act of sexual misconduct, sexual abuse or sexual relations with one's client, patient, student supervisee or with an ex-client within 24 months after termination of treatment" can subject the therapist to discipline.  68 Ill. Admin. Code ch. VII § 1400.80(i).  In her brief to this court, Pavlik did not argue any application of these rules to defendants with respect to the statute of limitations issue discussed herein and thus any such argument has been waived under Supreme Court Rule 341.  188 Ill. 2d R. 341.  The waiver issue aside, we find no clear indication in case law as to whether these rules should apply to extend the duration of a therapist's liability in a private civil action, as opposed to application in a disciplinary hearing.  Nor are we addressing the application of the rules to a therapist who is not licensed under them.  Assuming 
arguendo
 that the rules might apply in such a case, the facts before us here would nonetheless fail to warrant relief under the rules.  Although the Illinois Administrative Code does not define "sexual misconduct" or "sexual abuse" in this chapter, we find that any behavior by Kornhaber that Pavlik alleged to have occurred after termination of treatment (the November 3 phone call, the November 4 and 8 letters, and the wage suit) could not be captured by the terms sexual misconduct or sexual abuse.  Our discussion of intentional infliction of emotional distress which follows, concludes that Kornhaber's post-treatment behavior may indeed be a part of a continuum of tortious conduct for statute of limitations purposes for that count. However, that analysis does not affect our conclusion that the behavior alleged does not constitute sexual misconduct or abuse for the purposes of invoking the rules promulgated in the Illinois Administrative Code.

II. Intentional Infliction of Emotional Distress

Plaintiff alleges that defendant's frequent, unwelcome, and offensive sexual advances caused her extreme emotional distress.  To establish a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the conduct was truly extreme and outrageous, (2) that the actor intended that his conduct inflict severe distress, or knew that there was a high probability that his conduct would inflict such distress, and (3) the conduct must in fact have caused severe emotional distress.  
McGrath v. Fahey
, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809.  Liability arises only where the conduct complained of was "'atrocious, and utterly intolerable in a civilized community.'" 
Pavilon v. Kaferly
, 204 Ill. App. 3d 235, 245, 561 N.E.2d 1245, 1251 (1990) (quoting Restatement (Second) of Torts § 46, Comment d (1965)).  The 
Pavilon
 court found that continued pressuring of an employee for dates and offering her money in return for sexual favors constituted a cumulative pattern of offensive conduct sufficient to inflict actionable emotional distress.  Likewise, we find that, based on the well-pleaded facts in plaintiff's complaint, a jury could conclude that defendant's notes, sexually explicit comments, insistence on meetings the subject of which was his desire for sexual contact, and lewd behavior in an employer-employee relationship were such that a "woman of ordinary morality and sensibilities" would perceive them to be sufficiently offensive and sinister to rise to the level of extreme and outrageous behavior.  
Pavilon
, 204 Ill. App. 3d at 245, 561 N.E.2d at 1251.  This conclusion is supported by the persistence of the sexual pursuit and exacerbated by the fact that the offender was not only her employer but also her counselor.
  Thus to the extent that the trial court's comments on the sufficiency of the allegations could be interpreted to mean that plaintiff did not adequately plead this count, we disagree. 

Defendant claims however that his sexual advances took place outside the two-year statute of limitations for personal injury and any interaction beyond then, including the November 3 phone call, the November 4 and November 8 letters, and the wage dispute, was not independently actionable.  We agree that the applicable statute of limitations for intentional infliction of emotional distress is two years.  735 ILCS 5/13-202 (West 1996), 
Koelle v. Zwiren
, 284 Ill. App. 3d 778, 786, 672 N.E.2d 868, 873 (1996); 
Sullivan v. Cheshier
, 846 F. Supp. 654, 661 (N.D. Ill. 1994); 
Curcio v. Chinn
, 887 F. Supp. 190, 195 (N.D. Ill. 1995).  Emotional distress is a species of personal injury and is thus governed by the two-year prescriptive period set out in 735 ILCS 5/13-202.  
Dahl v. Federal Land Bank Assn. of Wester Illinois
, 213 Ill. App. 3d 867, 872, 572 N.E.2d 311, 314 (1991). 

But this does not end our discussion.  We still must analyze when the statute of limitations began to run in the instant case.  Our courts have noted that the purpose of the statute of limitations "'is certainly not to shield a wrongdoer; rather it is to discourage the presentation of stale claims and to encourage diligence in the bringing of actions.'"  
Hyon Waste Management Services, Inc. v. City of Chicago
, 214 Ill. App. 3d 757, 762, 574 N.E.2d 129, 132 (1991) (quoting 
Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.
, 61 Ill. 2d 129, 137, 334 N.E.2d 160, 164 (1975)).  Generally, a plaintiff's cause of action accrues when the interest at issue is invaded.  
Hyon
, 214 Ill. App. 3d at 762, 574 N.E.2d at 132.  However, where a tort involves continuing or repeated injurious behavior, "the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease."  
Hyon
, 214 Ill. App. 3d at 763, 574 N.E.2d at 132.  
Accord
, 
Rock Falls v. Chicago Title & Trust
, 13 Ill. App. 3d 359, 364, 300 N.E.2d 331, 334 (1973); 
Chinn
, 887 F. Supp. at 195.  The 
Hyon
 court set out the standard for a continuing violation and then held that the plaintiff's § 1983 suit did not establish a continuing violation by defendant but instead alleged only one discreet act (sealing the plaintiff's incinerator) and thus the cause of action accrued at the moment of the single act.  In discussing the statute of limitations, the 
Hyon
 court admonished readers that "[a] continuing violation * * * is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation."  
Hyon
, 214 Ill. App. 3d at 762, 574 N.E.2d at 132.  The court thus clarified that it was not tolling the statute of limitations because of delayed injuries, but instead viewing the defendant's conduct as a continuous whole for prescriptive purposes.   Under 
Hyon
, we conclude that Pavlik's recitation of an ongoing campaign of offensive and outrageous sexual pursuit has sufficiently established a continuing series of tortious behavior such that the prescriptive period should not run until the behavior's conclusion.  We find that where, as here, the acts are continuous, by the same actor, and of a similar nature, the prescriptive period for intentional infliction of emotional distress does not commence until the last act occurs or the conduct is abated.  
Hyon
, 214 Ill. App. 3d at 763, 574 N.E.2d at 132; 
Rock Falls
, 13 Ill. App. 3d at 364, 300 N.E.2d at 334; 
Chinn
, 887 F. Supp. at 195. 

Defendant counters that although the prescriptive period may not run during continuing violations, every occurrence within the continuum must be independently actionable.  Because the November letters and the wage dispute do not appear upon their face to be so boldly outrageous as to be actionable, defendant claims that his November actions cannot be considered as the final acts in the continuum and thus the suit must be dismissed.  We disagree with defendant for the following reasons.

Illinois courts have said that in many contexts, including employment, repetition of the behavior may be a critical factor in raising offensive acts to actionably outrageous ones.  
Pavilon
, 
204 Ill. App. 3d at 246, 561 N.E.2d at 1252 (noting that "[c]umulatively, this testimony * * * could support a finding that it was outrageous").  It may be the pattern, course and accumulation of acts that make the conduct sufficiently extreme to be actionable, whereas one instance of such behavior might not be.  
See
 Restatement (Second) of Torts § 46, Comment j (noting that the "intensity and duration" of the distress may determine whether a pattern of behavior is actionable).  It would be logically inconsistent to say that each act must be independently actionable while at the same time asserting that often it is the cumulative nature of the acts that gives rise to the intentional infliction of emotional distress.  Likewise, we cannot say that cumulative continuous acts may be required to constitute the tort but that prescription runs from the date of the first act.  See
 e.g.
, 
Bustamento v. Tucker
, 607 So. 2d 532 (1992) (holding that in an intentional infliction of emotional distress action the prescriptive period does not commence until the last act occurs or the conduct is abated when the conduct becomes tortious by virtue of its cumulative and synergistic nature); 
Supreme Court of New Jersey v. Wal-Mart Stores
, 729 A.2d 1006, 1010-11 (N.J. 1999).  Because it is impossible to pinpoint the specific moment when enough conduct has occurred to become actionable, the termination of the conduct provides the most sensible place to begin the running of the prescriptive period.  At the earliest then, the November 3 phone call or the November 4 letter, as a continuation of the ongoing inappropriate dialogue initiated by Kornhaber toward Pavlik, could be viewed by the trier of fact as the conclusion of the tortious act of defendant and the beginning of the running of the prescriptive period.

We note that the court in 
Hertel v. Sullivan
, 261 Ill. App. 3d 156, 633 N.E.2d 36 (1994), was reluctant to extend 
Hyon's
 continuing tort doctrine to a case in which a parishioner sued her priest for negligence and for intentional infliction of emotional distress based on a long-term sexual relationship. As an initial matter, we note that the 
Hertel
 court expressed great concern that priests not be analogized to mental health professionals for the purposes of tort liability.  Thus the court specifically stated that they were refusing to extend the duties (and the liability) of a priest to equal that of a professional therapist.  
Hertel
, 261 Ill. App. 3d at 160, 633 N.E.2d at 39.  As we are examining intentional infliction within the context of behavior by a professional counselor, we feel no such protective impulse
. We also note that the 
Hertel
 court's refusal to extend the 
Hyon
 rule to the case before it was not the basis for affirming dismissal of the plaintiff's complaint.  The dispositive issue in 
Hertel
 was the discovery rule. The plaintiff's sexual relationship with the priest occurred from 1983-1988 but she did not file suit until more than two years later.  The 
Hyon
 rule was of little help to plaintiff because the last act occurred outside the statutory period.  Plaintiff claimed she was not emotionally capable of understanding her victimization until 1992 and thus that the discovery rule tolled the prescriptive period until then.  The 
Hertel
 court held that the plaintiff could reasonably have ascertained her injuries more than two years before she sued and thus they affirmed the trial court's dismissal.  We find 
Hertel
 distinguished on the facts and the applicable law.

Because we find that the continuum of defendant's behavior must be scrutinized for statute of limitations purposes, and that any single act need not be actionable, we must disagree with defendant that his actions in November 1994, cannot possibly be considered for the purpose of determining when the prescriptive period began to run.  The instant case was decided on the basis of a section 2-619 motion to dismiss.  Our review must accept all well-pleaded facts and all reasonable inferences therein and we will grant the motion only if the plaintiff can prove no set of facts that can support a cause of action. 
Chicago Teachers Union, Local 1 v. Board of Education of City of Chicago
, 189 Ill. 2d 200, 206, 724 N.E.2d 914, 918 (2000).  Plaintiff's pleadings raise facts and inferences which support her claim that actions taken by defendant in November 1994 were a contributing factor to her distress.  We are therefore unable to conclude as a matter of law that these actions are not part of the continuum of offensive behavior by defendants.  We reverse the trial court's order to dismiss plaintiff's intentional infliction of emotional distress count.

III. Fraud

Plaintiff's complaint alleges that defendant knowingly misrepresented his credentials with the intent that she rely on the misrepresentation in choosing to work for and accept treatment from him.  Plaintiff claims that she would not have entered into an employment or counseling relationship with defendant had she known that he was not a clinical psychologist and therefore that the emotional distress she suffered was caused by this misrepresentation.  Because fraud counts are generally controlled by the residual five-year statute of limitations, (
Pearl v. Waibel
, 293 Ill. App. 3d 349, 355, 688 N.E.2d 340, 336 (1998)), plaintiff argues that the trial court improperly dismissed this count as untimely.  Defendant counters that the injuries alleged in the fraud count are the same personal injuries alleged in each of the other counts, and because plaintiff offers no evidence of fraud perpetrated after November 1, 1994, the two-year statute of limitations should also bar this count.  

Our supreme court has held that "[t]he determination of the applicable statute of limitations is governed by the type of injury at issue, irrespective of the pleader's designation of the nature of the action."  
Armstrong v. Guigler
, 174 Ill. 2d 281, 286, 673 N.E.2d 290, 293 (1996).  The court noted that "[w]e have long held that 'it is the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises which should determine what limitations period should apply.'" 
Armstrong
, 174 Ill. 2d at 286, 673 N.E.2d at 293 (quoting 
Mitchell v. White Motor Co
, 58 Ill. 2d 159, 162, 317 N.E.2d 505, 507 (1974)).  The court went on to hold that the written contract in the case was only incidental to the plaintiff's cause of action and that the residual five-year statute of limitations applied rather than the ten-year statute of limitations for written contracts.  Likewise, courts have been unpersuaded by plaintiffs' attempts to designate personal injury torts as contract disputes for the application of the longer statute of limitations. 
Doerr
 v. Villate, 74 Ill. App. 2d 332, 335, 220 N.E.2d 767, 769 (1966) (holding that an action for personal injuries, whether based upon a contract or tort theory, is governed by the statute of limitations for personal injury.)

Although count III is styled as a fraud claim, plaintiff alleges the same personal injuries alleged in her negligence count---a count which she admits is governed by section 13-202.  We therefore feel bound to follow 
Armstrong's
 reasoning and conclude that plaintiff's fraud count is controlled by the statute of limitations for personal injuries and not the residual statute applicable generally to fraud claims.  Because plaintiff does not allege that any fraud occurred within two years of filing the instant suit, we find that plaintiff's fraud claim is barred.

IV. Nuisance

In 
Corgan v. Mueling
, 143 Ill. 2d 296, 574 N.E.2d 602 (1991) our supreme court read a private right of action for nuisance into the Clinical Psychologist Licensing Act (CPLA).  225 ILCS 15/1 et seq. (1995).  By her second count, plaintiff alleges that defendant is responsible for an actionable nuisance under the CPLA.  The CPLA states that no unlicensed person shall "hold himself out to the public by any title or description of services incorporating the words 'psychological,' 'psychologic,' 'psychologist,' 'psychology,' or 'clinical psychologist' or under such title or description offer[] to render or render[] clinical psychological services * * * to individuals, corporations, or the public for remuneration."  225 ILCS 15/2 (West 1996).  Defendant repeats his claim that the only injuries alleged are personal injuries and thus under 
Armstrong
 the two-year statute of limitations applies and bars this claim.

The 
Corgan
 court did not discuss whether the personal injury or residual prescriptive period should be applied to the nuisance actions it approved under the CPLA.  In 
Sullivan v. Chestier
, 846 F. Supp 654 (N.D. Ill. 1994), however, the court did confront the question.  The 
Sullivan
 court concluded that statutory rights of action such as claims under the CPLA, as opposed to statutory penalties, are governed by the five-year residual statute of limitations.  
Sullivan
, 846 F. Supp at 658-59.  However, in light of the strong language by our supreme court in 
Armstrong
, an opinion under which we are governed, admonishing us to consider the injury not the style of the action, we look to the fact that plaintiff alleges only personal injuries in her nuisance count and determine that it too is barred by the statute of limitations.  As was true with the fraud count, there is no indication in the pleadings that defendant held himself out as a psychologist in the November 4
 or November 8
 letters nor in the wage dispute that ensued.  Likewise, as discussed above, we find that defendant did not render clinical services to plaintiff after their last formal session on October 17, 1994.  We thus see no evidence that defendant committed a nuisance under the CPLA during the statutory period and find that the plaintiff's claim is barred. 

The 
Sullivan
 court itself recognized that Illinois courts look to the nature of the damage in determining application of statutes of limitations.  
Sullivan
, 846 F. Supp at 659, (citing 
Schreiber v. Eastern Airlines, Inc.
, 38 Ill. App. 3d 556, 348 N.E.2d 218 (1976) in which contract claim arising from burn injury was considered physical injury and was therefore governed by two-year prescriptive period). 
 If the injuries in 
Sullivan
 could all be subsumed under the category of personal injury, the court's holding on the statute of limitations would be internally inconsistent and the departure for nuisance claims would be wholly arbitrary.  However, in 
Sullivan
, the relevant claims apparently included intangible injury to the rights of society and companionship suffered by the plaintiff to which the court may have looked in determining the prescriptive period for the nuisance count.

V. Breach of Fiduciary Duty

In light of a recent decision from our supreme court, plaintiff's count of breach of fiduciary duty need not detain us long.  We agree with defendant that plaintiff's breach of fiduciary duty count is duplicative of her malpractice count and was properly dismissed by the trial court.   Initially we note that both counts are based on the same core of operative facts and the breach of fiduciary duty count alleges no facts nor injury beyond those alleged in the negligence count.  Our supreme court has held that "we need not recognize a new cause of action for breach of fiduciary duty when a traditional medical negligence claim sufficiently addresses the same alleged misconduct."  
Neade v. Portes
, 193 Ill.2d 433, 445, 739 N.E.2d 496, 503 (2000).  In essence, the court found that the elements of breach of fiduciary duty overlap with those of medical negligence to such an extent that the former claim would "boil down" to the latter in any case arising out of the same operative facts.  
Neade v. Portes
, 193 Ill.2d at 444, 739 N.E.2d at 502.  Noting that the disfavor of duplicative claims has long been used to dismiss breach of fiduciary duty counts in cases also alleging legal malpractice, the court found that the absence of additional facts or injuries should also bar fiduciary duty claims in medical negligence cases.  
Neade
, 193 Ill.2d at 440-46, 739 N.E.2d at 501-503.  Our supreme court thus held that when the plaintiff was also suing the physician for malpractice, the plaintiff could not state a cause of action for breach of fiduciary duty against the physician for failing to disclose a contract with an HMO the financial benefit from which may have affected his willingness to order certain diagnostic tests.  As the 
Neade
 court noted, the existence of previous fiduciary duty suits do not themselves suggest that simultaneously bringing a breach claim and a malpractice claim is appropriate "as the plaintiffs in those cases did not bring causes of action sounding in 
both
 breach of fiduciary duty and negligence (emphasis ours)" but only in breach of fiduciary duty.  
Neade
, 193 Ill.2d at 449, 739 N.E.2d at 505.

We find the court's reasoning apposite to the instant case.  Cases citing the therapist's fiduciary duty use the identical duty standard as the cases discussed above in the negligence section. 
St. Paul Fire & Marine Ins. Co. v. Downs
, 247 Ill. App. 3d 382, 617 N.E.2d 338 (1993).  Thus suits raising both breach of fiduciary duty and negligence claims based on identical actions by a therapist will end up being duplicative.  The 
Neade
 court explained that it was in part motivated by the concern that plaintiffs would plead claims for breach of fiduciary duty in addition to medical malpractice in order to avoid the two year statutes of limitations for malpractice.   
Neade
, 193 Ill.2d at 441, 739 N.E.2d at 501 (referring to arguments raised in 
D.A.B. v. Brown
, 570 N.W.2d 168 (Minn.App. 1997)).  We have similar concerns in the instant case.  The breach of fiduciary duty count was not included in the original complaint and was not added until after the statute of limitations issue had come to light.  We are therefore convinced that plaintiff's breach of fiduciary duty count is duplicative of her malpractice/negligence count and was properly dismissed by the trial court.

VI. Claims against CCA

Counts VI, VII, VIII, and IX of plaintiff's complaint allege claims of negligence via 
respondeat superior
, direct corporate negligence, nuisance and intentional infliction of emotional distress by CCA.  Defendant argues that plaintiff's failure to request that this court reverse the trial court's dismissal of these counts results in waiver under Supreme Court Rule 341(e)(7) which states that:" [p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."  155 Ill. 2d R. 341.  As to plaintiff's respondeat superior and direct negligence counts and her nuisance count, we find that the same reasoning applies to CCA as applied to Kornhaber and thus, regardless of the question of waiver, we affirm the trial court's dismissal.  As to plaintiff's intentional infliction of emotional distress count, plaintiff's appeal here was taken from the trial court's dismissal of all her counts.  As CCA's liability is in essence contingent upon Kornhaber's personal liability, which is argued extensively in plaintiff's brief, it would be incongruous for us to deny the same result on the statute of limitations question.  In light of this, and of the supreme court's admonition in rule 366 that "[i]n all appeals the reviewing court may, in its discretion, and on such terms as it deems just * * * (5) enter any judgment and make any order * * * and grant any relief * * * that the case may require." (134 Ill.2d R. 366), we reverse the trial court's dismissal of plaintiff's intentional infliction of emotional distress count against CCA.

Conclusion

Accordingly, we reverse the trial court's dismissal of Pavlik's intentional infliction of emotional distress counts against both Kornhaber and CCA and this cause is hereby remanded to the circuit court of Cook County for further proceedings not inconsistent with this opinion.  We affirm the dismissal of Pavlik's negligence, nuisance, fraud and breach of fiduciary duty counts against both defendants.

Affirmed in part, reversed in part, cause remanded.

BURKE, P.J. and CAHILL, J., concur.

FOOTNOTES
1:
Plaintiff alleges that she also spoke to Kornhaber on the phone on November 3, but provides no information about the context or content of the phone call.  Nor does she allege that previous therapy sessions were conducted by phone.  We thus find that the above analysis  disposes of any similar issue raised by the alleged phone call.

2:
The details of this obligation are thinly explained in Pavlik's brief and this court's knowledge of the supervision under which new therapists work is limited.  We accept her proposition that she and Kornhaber had a formal patient-therapist relationship based in part on his failure to challenge this issue and in part because, regardless of the accuracy of this characterization, the following analysis disposes of the issue.